## Hanley *versus* O'Donald.

The exemption law of the 9th April 1849, must be so construed as to admit a dealer to enjoy $300 of his capital in trade. A new stock purchased with the proceeds of other articles, retained under the exemption law, is protected.

ERROR to the Common Pleas of *Schuylkill county*.

This was an action of trespass, originally brought before a justice of the peace, by John O'Donald against John Hanley, a constable, for levying on and selling goods of the plaintiff, claimed to be retained under the exemption law of the 9th April 1849. The justice gave judgment for the plaintiff for $99.99, from which the defendant appealed to the Common Pleas.

On the 2d January 1852, Michael J. Seibert obtained a judgment, before a justice of the peace, against John O'Donald, the plaintiff below, for $65.68. An execution was issued on the judgment, and under the Act of 9th April 1849, the plaintiff's goods, consisting of furniture, bar fixtures, liquors, &c., were appraised at $290.91, and the execution returned "no goods, after appraisement and claim of $300 worth."

On the 21st May 1852, a *pluries* execution was issued on the same judgment, by virtue of which the defendant, John Hanley, levied on certain liquors, not embraced in the prior levy and appraisement. O'Donald claimed to retain the goods levied on, and demanded an appraisement, which the constable refused to a greater extent than $9.09, on the ground that O'Donald had on the former execution selected and retained property to the extent of $290.91. The constable proceeded to advertise and sell the liquors levied on, and applied the proceeds, $84.77, after paying the costs, to the Seibert judgment.

On the trial in the Common Pleas, the defendant's counsel submitted the following points, upon which he requested the court to charge the jury:—

1. The plaintiff was not entitled to have three hundred dollars' worth of property set apart under the Act of 9th April 1849, on the *pluries* execution, issued on Seibert's judgment, he having had the benefit of the exemption law on an execution issued on the same judgment before that time.

2. The plaintiff was not entitled to the benefit of the Act of the 9th April 1849, a *second* time, on process issued on the same judgment, without proof that he had parted with the property first set apart to him at its appraised value on an execution issued on the Seibert judgment, and that the proceeds thereof had been by him invested in the property levied on by the constable, under the *pluries* execution, issued on the same judgment.

[Hanley *v.* O'Donald.]

3. That under all the evidence in the cause the plaintiff is not entitled to recover.

4. A stock of spirituous liquors cannot be exempted from levy and sale, under the Exemption Act of 9th April 1849.

The learned judge (HEGINS, P. J.) answered these points in the negative, and instructed the jury that upon the whole evidence, the plaintiff was entitled to recover; that the measure of damages was the value of the property at the time of the sale by the defendant, and they might adopt the price it then brought as its true value, together with interest from that time.

To this charge the defendant's counsel excepted; and a verdict and judgment having been given for the plaintiff for $110.17, the defendant removed the cause to this court, and here assigned the same for error.

*Cumming* and *James H. Campbell*, for the plaintiff in error.— The plaintiff having converted his liquors, once set apart and appraised, into money, could not re-invest the proceeds in a new lot of liquors, and claim exemption for them. In other words, he could not carry on the liquor business under cover of the exemption laws.

The exemption laws, which were intended for the comfort of a man's family, are not to be invoked and employed as an instrument to support the traffic in liquor. This would be in direct conflict with the principles of law settled in the case of Knabb *v.* Drake, 11 *Harris* 490.

*F. W. & J. Hughes*, for the defendant in error.—The plaintiff only asked for that which the law would give him, and he was entitled to have it; and the case of Knabb *v.* Drake, 11 *Harris* 490, cited in the plaintiff's paper-book, clearly sustains the position here taken.

The refusal of the constable to hold an appraisement, makes him a trespasser and wrongdoer, liable for the full amount of the property: Wilson *v.* Ellis, 4 *Casey* 238.

The opinion of the court was delivered by

WOODWARD, J.—It was meant for a humane construction of the $300 exemption law, when it was said, in Hammer *v.* Freese, 7 *Harris* 257, and Knabb *v.* Drake, 11 *Harris* 490, that it exempted only specific articles of property, such as the officer should set out to the debtor upon appraisement, and not the money into which these articles might chance to be converted. The court had in mind the image of a spendthrift husband and father, who, if permitted to convert the property set apart, might deprive his

[Hanley v. O'Donald.]

family of the comforts and benefits which the law intended to secure to them.

These cases were well enough decided on their special circumstances, but that the generalization was defective, and the construction too narrow for even the humanity of the statute, is apparent from the case in hand, where the exempted articles were liquors and liquor casks. Now the more specific the form in which the debtor should be compelled to retain such articles, the worse for his family. Only by conversion could they be made to enure to the benefit of those who were peculiarly the objects of the law's bounty. To tell a liquor dealer he may keep $300 worth of his stock exempt from levy and· sale, but that by conversion he forfeits the benefits of the exemption, is not doing very much for his family—is, in effect, denying them altogether the benefits of the statute.

There is many a green-grocer and small shopman who manages to support his family on a stock in trade that never exceeds at one time $300; how is he to have this exemption, if it is to be confined to the specific articles set off and appraised? Require him to *keep* the goods set apart, you take away the occupation whereby he lives.

The statute must be so construed as to permit articles of merchandise to be sold. But it is of the nature of such business to invest the proceeds of sale in other articles of merchandise, and if the statute is not to be defeated of its humane purposes, the newly-purchased goods must be held exempt. In other words, the statute must be so administered as to permit the debtor, who is a dealer, to enjoy $300 of his capital, in trade, in the form and manner in which alone it can be enjoyed, by buying and selling. And a creditor has no right to complain that it is a double exemption, which forbids him to levy his second execution on goods purchased by those which were exempted from the levy of his first execution. It is not a double exemption, but a single one, carried over to the new stock, and running along with the debtor's business, in such manner as to make the statute available to *him* as well as to other poor debtors.

If it be said that this construction will permit a man to keep his creditors at bay, whilst he may be doing a profitable business, it must be accepted as a fair consequence of the statute, where the stock in trade, and all the debtor's personal goods, do not exceed $300. So much property the law allows him, and surely the law will not punish him for using it in a lawful manner for the support of his family.

These views of the statute lead so necessarily to the affirmance of the judgment in this case as to require no special application.

Doubtless, the court and jury considered the property levied on the last time, as that which had replaced the exempted articles

[Hanley *v.* O'Donald.]

and been purchased by them, and therefore, in effect, the same, or at least equally exempt from the second levy. In this view of the .case, the constable had no right to take the goods; he made himself a trespasser, and the verdict and judgment against him were right.

The judgment is affirmed.