## Strouse's Executor *versus* Becker.

*Debtor's Exemption may be claimed against an Attachment Execution.*

1. A debtor may claim the benefit of his statutory exemption against an attachment in execution.

2. But he must make his claim within a reasonable time after the issue of the attachment in execution process; it is too late if made by plea to the *scire facias.*

Strouse's Executor *v.* Becker, 2 Wright 190, affirmed.

ERROR to the Common Pleas of *Schuylkill county.*

This case was tried in the court below, and the judgment of that court reversed on writ of error here, as reported in 2 Wright 190.

[Strouse's Executor *v.* Becker.]

On the second trial, by agreement of counsel for plaintiff and defendant, the evidence introduced on the former trial as printed in the plaintiff's paper-book, was read and submitted as the evidence in the case, no other being offered. The case was submitted without argument, it being apparent from the remarks of Judge Hegins that he would instruct the jury to find for the defendant, in order, as he said, "that the Supreme Court, who must have misapprehended the facts, might have an opportunity of reviewing their own decision."

There was a verdict and judgment for defendant; whereupon this writ was sued out, and the direction of the court to find for the defendant assigned for error. The facts of the case are fully stated in the opinion of this court.

*F. W. Hughes* and *J. W. Roseberry*, for plaintiff in error.

*John Bannan*, for defendant in error.

The opinion of the court was delivered, February 2d 1863, by

WOODWARD, J.—In 1857, Roseberry, a creditor of Becker, levied a *fieri facias* upon the household goods of the latter, who claimed the benefit of the exemption statute. The goods were appraised at $214.25, and set apart for Becker. Before the appraisement, he had obtained an insurance on them from the Lycoming Mutual Insurance Company. Part of the goods were subsequently destroyed by fire, and the company adjusted the loss with Becker at $137.50; but, before this sum was paid over to him, Strouse, another creditor, attached it in the hands of the insurance company, by attachment execution. Becker made no claim of exemption against Strouse at the time the process was served, but after the company, in answer to interrogatories, had confessed the money in their hands, he intervened and pleaded the prior exemption under Roseberry's writ, and that the money attached was the proceeds of part of the goods that had been exempted and set apart for him on that writ.

When the case was here two years ago (2 Wright 190), we held that Strouse was an execution-creditor, and, as such, was not affected by the exemption which Becker had claimed successfully against Roseberry, but that he was bound to renew his claim against Strouse within a reasonable time after service of the process, and having failed to do so, that he had lost his rights under the statute.

We are supposed to have fallen into error in this ruling, and the case has been brought back to give us an opportunity to correct it. The argument is, that a debtor is not bound to assert his rights of exemption as against an attachment execution, and

[Strouse's Executor *v.* Becker.]

that a fund which represents exempted goods is not liable to attachment.

The Exemption Statute of 1849 provides that the officer charged with the execution of any "warrant" for levying and selling the property of a debtor, shall, "if requested by the debtor," summon three persons to appraise the property; $300 shall be set apart for him, and be exempted from levy and sale on the said warrant.

It is observable that the exemption is limited to the warrant under which the levy and sale are about to be made. Of course it is inapplicable to a subsequent warrant of a different creditor, and hence we have always held .that the debtor must claim it against every successive execution-creditor.

Let it also be observed that the exemption is to be granted only when requested by the debtor, which has led us to declare in many cases that there must be a request or demand by the debtor, at or about the time of the levy, to save the trouble and costs of further proceedings.

The other provisions of the statute in reference to the appraisement are directory, and inapplicable, of course, where the exemption claimed is against a warrant whose office it is to seize cash, and not to levy on goods or lands. There can be no appraisement of money, for money is the measure by which all things else are appraised—itself estimable only by the standards of value prescribed by the laws of the land. It is to be counted, not appraised. But though this provision of the exemption statute be not applicable to a seizure or attachment of money, the notice which the debtor is required to give to the officer may reasonably be required in such cases—not as a means of obtaining an appraisement, but of preventing further litigation. We have an illustration in this case of a debtor coming in by a special plea to a *scire facias* against a garnishee, simply to assert a claim which the statute requires him to assert, in the first instance, to the officer charged with the warrant.

The final observation I have to make on this statute is, that that the word warrant is large enough to embrace execution attachments. This process was devised by the Act of June 16th 1836, for the purpose of reaching stocks, debts, and deposits of money, and it is called in the statute itself a proceeding "*to levy an execution*" upon those kinds of property which, before that time, were not leviable by *fieri facias* or other execution process. It is therefore mere execution process, so far as the debtor is concerned. The *scire facias* to the garnishee is auxiliary to the execution, and designed only to accomplish the execution purposes of the process. As between the creditor and debtor, it is as essentially an execution as a *fieri facias*, and the

[Strouse's Executor v. Becker.]

proceedings under it are a levying an execution as truly as the seizing of goods under a *fieri facias*.

These observations answer sufficiently the argument that the exemption law is inapplicable to execution attachments. It is important to poor debtors that we should hold it applicable, else when their $300 worth of property happened to be in the form of stock, debts, deposits of money, or of goods pawned, pledged, or demised, they would have no relief.

In 1851, the legislature passed what is called the Widow's Law, giving to her and her children $300 worth of her deceased husband's estate, to be appraised and set apart in the same manner as is provided for in the Exemption Act of 1849. Under this act, we held that there must be an election by the widow at the proper time, and that she must take her allowance in property either real or personal, and could not be permitted to take it in money: Neff's Appeal, 9 Harris 247; Davis's Appeal, 10 Casey 257. Which decisions, so far as regarded the allowance in money, were remedied by the Act of 8th April 1859 (Purdon 1314), enacting that the widow and children of any decedent, entitled to retain $300 out of his estate, "may elect to retain the same, or any part thereof, out of any bank notes, money, stocks, judgments, or other indebtedness" to the decedent. And the act expressly applies the same provision to every person entitled to the exemption provided for by the Exemption Law of 1849, above considered. Here, then, we have legislative authority for saying that money may be exempted under the Act of 1849, and that whilst no appraisement is required, there must be an election by the debtor, as by the widow under her Act of 1851.

It would be very absurd to hold that the Exemption Law of 1849 is not applicable to attachment execution, when the peculiar objects of such execution have been brought within the act by the subsequent legislation of 1859. But though within the act, the directory provisions regarding appraisement are not applicable where money is to be levied, whilst a request, demand, or "election," as the Act of 1859 styles it, is necessary. And that election must be made within a convenient and reasonable time after service of the process. It is too late if made by a special plea to the *scire facias*.

What has been advanced is sufficient, we think, to show that if Becker's goods had not been burned, they would have been liable to be seized in execution by Strouse, and that the exemption of them from Roseberry's warrant would not have availed without a new demand and appraisement to protect them from Strouse's writ; that these goods having been converted into money in the hands of the insurance company, the money was seizable by the appropriate writ of execution, unless the debtor

8 Wr.—14

gave notice of·his election to retain it by virtue of the exemption statute; and that no such election having been made in this instance, except by plea to the *scire facias* against the garnishee, the debtor lost his right of exemption as to Strouse, and the money should go to him upon the attachment execution.

The judgment is reversed, and a *venire facias de novo* is awarded.