BOYNTON, administrator, *et al. vs.* WESTBROOK.

1. Where a contractor had furnished materials and almost completed work on a house before the death of its owner, and did complete the work within a few days thereafter, by agreement with the administrator, he could record his lien, in spite of the death of such owner.

2. Where the proceeds of the house and lot of a decedent are in the hands of his administrator for distribution, the claim of a contractor, under the foreclosure of his lien for work done on such house and materials furnished therefor, will take precedence of a claim of the widow on account of a debt for trust funds.

February 7, 1885.

Liens. Contractors. Record. Administrators and Executors. Husband and Wife. Trusts. Before Judge STEWART. Spalding Superior Court. February Term, 1884.

To the report contained in the decision, it is necessary to add only the following: Westbrook filed his petition to the superior court, alleging, in brief, as follows: He was a mechanic and contractor, and as such built a house for Banks, commencing the work in 1869, and doing the last work on the building on April 2, 1880. During the time from 1869 to the death of Banks, there were mutual dealings and accounts between him and the plaintiff, and no exact time was specified for completing the work, but it was to be done as directed, and the payment was to be due on demand. In January, 1880, Banks died. In March, 1880, Boynton took out temporary letters of administration on his estate, and in April following permanent letters. As soon as letters were obtained by Boynton, Westbrook notified him that he was ready to complete the house. Boynton replied that he knew of nothing that was to be done, unless it was to put hoods over the doors, and he was not authorized to permit the entire completion of the house. Westbrook proceeded to put on the hoods, they having been made during the lifetime of Banks and pro-

vided for in the original plan of the building. Westbrook claimed a lien, which was filed April 3, 1880, and recorded April 8, 1880. (The declaration is marked filed April 5, 1881, and process is dated the same day.) Boynton, after the issuance of permanent letters, obtained leave to sell the real estate of his intestate, and advertised and sold the residence on the first Tuesday in January, 1881. Plaintiff understands that the property was bid in for the estate, but prays that, if it passed title, he be decreed to have a special lien on the fund arising therefrom.

The defendant pleaded set-off of medical services performed by the deceased during his lifetime. He also denied that the plaintiff was entitled to the lien, on the ground that the work was not completed and the lien was not recorded in proper time. He further pleaded that the estate was insolvent; that the wife of decedent had a claim for trust funds belonging to her which had gone into his hands, and that the estate was not sufficient to pay both that and the plaintiff's claim.

The case was referred to an auditor, and to his report, allowing plaintiff's claim, with certain deductions, defendants excepted, the widow of Banks having been made a party. It is unnecessary to detail the evidence, further than to state that, on December 5, 1880, a notice of plaintiff's claim of lien was served on the administrator.

The jury found, and the court entered judgment in favor of the plaintiff for $1,080.49. Defendants moved for a new trial, which was refused, and they excepted.

BECK & BEEKS, for plaintiffs in error.

JOHN I. HALL, for defendant.

JACKSON, Chief Justice.

Banks died in debt to his wife for trust money, and in debt to Westbrook for material furnished and work done on the residence where he died. After Banks's death,

Westbrook foreclosed his lien—having completed the work as agreed by him and the administrator, it being a mere trifle—within the time prescribed by law. The house and lot were sold by the administrator, who held the proceeds for distribution, and the question is, which debt has preference to payment out of this fund in the hands of the administrator, the wife's trust debt or the contractors and mechanic lien?

1. We think that Westbrook was in time in recording his lien, though after Banks's death, by analogy to the decision in 49 *Ga.*, 594, so as to take what the law entitled him to in the distribution. It would be hard if he could not, the work being nearly completed, and finished by agreement with the administrator a few days after the death.

2. That he did the work and furnished the material is unquestionable, and that the intestate owed him something over a thousand dollars therefor is equally clear. That he sued in time is also true. So, too, that Mrs. Banks's trust debt amounts to some eight or nine hundred dollars, and that the administrator has but some sixteen hundred dollars of funds to pay both—not enough for both, is also true; and hence the naked question of law is, who has preference? The auditor and the court below gave it to the lien of the mechanic and contractor, and the widow excepted and assigns that judgment as error.

Undoubtedly the statute of distributions, Code, §§2533, 2534, 2535, gives preference to a trust debt over mortgages, liens, etc.; and if this estate were paid for, then the statute would give preference to the trust debt. But this court held in 44 *Ga.*, 600, that the lien of laborers who made the crop is in the nature of purchase money, and was preferred to exemption of personalty in the crop they made. It is true that this was not under the statute of distributions after the death of the husband; but the principle is established that such labor is in the nature of purchase money. So in 54 *Ga.*, 306, on page 309, this court says, speaking

of the lien of a factor's advancement, "True, his (a judgment creditor's) lien was on the property of the debtor, present and future. But this law is a provision as to the terms on which he shall acquire property. When the property comes to him, he gets it subject to the law at the time. All these lien laws are based on the equitable idea that the property does not, in fact, belong fully to the debtor until they are discharged, since without them he could not get the property," etc. Much stronger is the case at bar. The very house which gives value to the lot is the work of this mechanic, and this debtor did not get full title to it until this debt, in the nature of purchase money, was paid, and this· lien was extinguished. It is not, therefore, decedent's property to be distributed, until the lien of the mechanic, who created the house, is paid.

And on this line this court held in *Strickland, adm'r, vs. Dent,* 25 *Ga.,* 42. That case, like this, was where the estate of a decedent was in the hands of an administrator for distribution, and the ruling is that the vendor of the land was entitled to payment out of the sale of the land before other creditors, on the ground that the title did not pass to the decedent until the purchase money was paid. It is true that in that case, in the 25 Ga. reports, the decedent held a bond for titles, and the deed had not been actually made, but the equitable principle seems to be that the unpaid purchase money would be held superior in equity to the order of payment prescribed in the statute of distribution which preferred other creditors.

The principle is that a perfect equitable title does not pass to the decedent until he has paid for the land, and it is not subject to distribution under the statute until that is paid, or that the balance due must be paid first, before the remainder can be distributed according to the statute.

It is much to be doubted, however, that such would have been the decision in that case if the deed had been actually made and the legal title had passed. It is cited as bearing somewhat on the line of this opinion. But in

1st B. Monroe's reports,[*] the court of appeals of Kentucky had a similar question before it, and held that the right of a widow to dower out of the lands of her husband was subordinate to the mechanics' lien on the houses erected thereon by them.

The court says : " Kelly (the decedent) never had any right to the house, or to any part of it, unincumbered by the statutory lien; how, then, could his wife, whose right was consequential merely, have ever had a broader and better interest in the house than the husband himself ever had," and hold that the widow would be entitled to dower out of the remainder only of the proceeds of the house and lot after the mechanic and material man were paid.

So here we hold that the intestate had no right to this house until the material man and mechanic were paid for what made the house, to-wit, the material out of which it was constructed, and the mechanic who built it out of that material, and therefore his widow had no right, consequential to his death, to the payment of a trust debt which her husband owed her, out of this house in Griffin, until this statutory lien for the material in and work on, the house was paid.

Most certainly it will strike all just minds as right to pay the builder of the house out of its proceeds, before anybody else can claim equitable rights to be paid out of it after the death of the owner, when the owner himself would have been obliged to pay him before any other debt. This was the object and is the spirit of our lien laws for the benefit of those who create property ; " and the lien given by the statute would be unavailing and illusory," to use the language of the Kentucky court, if this construction were not put upon those laws.

We hold, therefore, that this lien, having been asserted and being prosecuted in time, should be paid first out of the proceeds of the house and lot, and then the remainder, which is the only part for distribution, being the only

property really owned by decedent, be distributed under the statute of distributions. We are of opinion that if any decisions of this court can be found militating apparently against these views, the war is not real, but seeming only. They will not embrace statutory liens which create property on that property, and which are more like a lien created on the vendor's property before the vendee acquired title; in which case, the majority of this court ruled in *Murphy v·. Vaughan,* 55 *Ga.,* 361, that such lien had to be paid before the statute of distributions would distribute it as the decedent's property, to give a year's support to his family. Though I dissented, yet that case decides the law until a majority of this court reverse it.

Judgment affirmed.

See cited by plaintiff in error, 10 *Ga.,* 73; 7 Daly 471; 28 Maine. 511; 45 Am. Dec., 680; 39 Pa., 133.

By defendant in error, 30 *Ga.,* 444; 51 *Id.,* 560; 49 *Id.,* 594; 44 *Id.,* 308; 53 *Id.,* 299; 61 *Id.,* 584; 43 *Id.,* 477; 55 *Id.,* 361; 54 *Id.,* 308; 44 *Id.,* 600; 25 *Id.,* 42; 1 B. Monroe, 257.