Maschke, Receiver, Appellant, *v.* O'Brien.

Argued November 18, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,

*Blair N. Reiley, Jr.,* with him *Harold D. Greenwell,* for appellant.

*Vincent P. Desmond,* for appellee.

OPINION BY KELLER, P. J., January 30, 1941:

The question involved in this appeal is whether a judgment debtor, whose automobile is the sole article of property levied upon in execution, is entitled, under his claim for exemption, to receive from the sheriff $300 out of the proceeds of sale of the automobile?

The court below held that he was. We agree with the court.

The plaintiff recovered a simple judgment, without waiver, against the defendant for $826.71. A writ of fieri facias was issued on the judgment and by virtue thereof the sheriff levied upon a Ford sedan automobile belonging to defendant. Four days later the defendant filed with the sheriff his claim for exemption under the Act of April 9, 1849, P. L. 533. Pursuant to and in accordance with the provisions of the statute, the sheriff

summoned three distinterested and competent persons, who appraised the automobile at $500.

Within a few days thereafter, and prior to the advertising of the sale, the defendant, by his attorney, sent an additional notice to the sheriff setting forth that upon a sale the automobile would be converted into cash and claiming such portion of the proceeds of sale as amounted to $300; and explained that his claim was for $300 worth of the car, to enure to his benefit upon the conversion into cash.

The automobile sold for $525. The execution creditor and the defendant each claimed the $300. By agreement this amount was paid into court and an interpleader framed. The court awarded the fund to the defendant. The execution creditor appealed.

The appellant relies upon several cases that followed closely after the enactment of the exemption statute, which stated, by way of *dicta*[1]—for the question here at issue was not involved in any of them—, that a debtor is entitled, under his exemption claim, to receive property only, and not $300 in money. The reason given was that the exemption was chiefly intended for the benefit of the debtor's family and "a family stripped of every comfort might not be much the better of $300 in the pocket of a thriftless father" (*Hammer v. Freese,* 19 Pa. 255, 257, (1852) ). Whether Chief Justice BLACK, who wrote that opinion, correctly interpreted the legislature's thought in passing the exemption statute, the General Assembly shortly after made it clear, by passing the Act of April 8, 1859, P. L. 425, that it had no objection whatever to the persons entitled to claim the $300 exemption under the Act of 1849, supra, retaining it "out of any bank notes, money, stock, judgments or other indebtedness, to such person." The premise built up by obiter dicta expressions in decisions

---

[1] Inter alia, *Hammer v. Freese,* 19 Pa. 255; *Knabb v. Drake,* 23 Pa. 489.

prior to the Act of 1859 was demolished by its enactment. See *Strouse's Executor v. Becker,* 44 Pa. 206, 209 (1863). The Act of 1859 has not been repealed as to *judgment debtors:* See Act of June 7, 1917, P. L. 447, p. 544.

Even before the Act of 1859 was passed, the Supreme Court, in *Hanley v. O'Donald,* 30 Pa. 261 (1858), criticized too narrow a construction of the Exemption Act as a denial of the benefits intended to be given. And in *George v. Ehrgood,* 31 Pa. 329 (1858), where it was held that $300 properly allowed the debtor out of the proceeds of sale of his real estate could not be attached in the hands of his attorney, the court said (p. 330) : "The plain sense of the law is, that $300 worth of property is to be saved to [the debtor] from his execution creditors; and this money, which is given in its stead, cannot be attached while passing from the court to his hands." The dictum in *Bonsall v. Comly,* 44 Pa. 442, 446, relied on by the appellant, may have been the result of a mistaken impression, obtained from a reading of its title,[2] that the Act of 1859, supra, was limited to the exemption claims of widows and children of decedents, whereas it applied to "every person entitled to the exemption provided for in the Act" of April 9, 1849, and that includes defendants in judgments obtained upon contract; but, in any event, it was only dictum, for the points *decided* in that case were: (1) That replevin will not lie for chattels distrained for rent and sold after an election and appraisement under the Act of 1849; (2) that a levy on property owned by two or more persons *jointly* is not within the exemption statute.

It must also be remembered that in 1849 and for some

---

[2] The provision that the subject of a bill passed by the legislature shall be expressed in its title, was first put in the Constitution by the Amendment of 1864 (Art. XI, sec. 8) to the Constitution of 1838.

years following it, there were few, if any, articles of personal property owned by a judgment debtor of greater value than $300; and that as respects his property which might exceed that amount in value, to wit, his real estate, the statute specifically provided that if real estate not exceeding $300 could not be set aside under the claim for exemption, he was entitled to receive $300 of the proceeds of the sale of the real estate. It was thus made apparent that the purpose of the statute was that a judgment debtor should not be left destitute and wholly dependent on the public or charitably inclined persons, but that he should be allowed to retain property or money to the amount of $300 to tide him over his financial extremity and the loss of his property by sale on execution process.

Now, it is not uncommon for a judgment debtor to own an automobile, a truck, or some machine or appliance useful or necessary in his work or business, of a greater value than $300, and the statute should be applied in the liberal and benevolent [3] spirit in which it was enacted. Keeping that in view, there is neither rhyme nor reason in holding that if the debtor has such a machine or appliance worth $295, and it is his only leviable property, he can keep it and the creditor get nothing, but if it is worth $305, the creditor will get it all and he have nothing.

We think in the latter case, if claim for the exemption is promptly made, the car, machine or appliance should be sold under the execution and the debtor's exemption paid to him out of the net proceeds, just as was done in the present case; and in the long run, this course will be to the advantage of the execution creditor also, for appraisers will not then be tempted to undervalue the article for the benefit of the debtor.

Our viewpoint was impliedly recognized in *Wunderly*

---

[3] *Com. ex rel. Collins v. Boyd*, 56 Pa. 402, 404; *Pierce v. Boalick*, 42 Pa. Superior Ct. 218, 221.

*v. Leopold,* 53 Pa. Superior Ct. 31, where a bank recovered judgment against Wunderly for $300 and issued execution. The sheriff levied on an automobile. Wunderly claimed his exemption. The sheriff summoned appraisers who appraised the automobile at $260. Leopold then claimed the automobile as his property, gave bond and took it into his possession. On the trial of the interpleader a verdict was entered in favor of the bank for $300, the agreed value of the automobile, and Leopold paid the money to the bank. Wunderly was nevertheless allowed to recover his claim for $260—the appraised value—from Leopold and the surety on his bond. In the opinion, (p. 41), this court referred, "to the right of R. G. Wunderly to his $260 exemption *which he claimed out of the proceeds of the sale of the automobile by the sheriff,"* and on p. 42, said: "We think the opinions of the court below ...... sufficiently vindicate the judgment in favor of the plaintiff for the amount of his exemption *which would have come out of the sale of the automobile."* (Italics supplied).

And in *McFarland's Est.,* 16 Pa. Superior Ct. 152, 154, President Judge Rice, speaking for this court respecting the assignor's reservation of his exemption in a deed of assignment, said: "Such reservation entitles the assignor to retain and have set apart to him any of the assigned property or *money, being the proceeds thereof,* to the amount of $300." (Italics supplied).

Of course, the claim for exemption, whether out of personalty or realty, must in all cases be made seasonably (*Com. ex rel. Collins v. Boyd,* 56 Pa. 402; *Diehl v. Holben,* 39 Pa. 213; *Williamson v. Krumbhaar,* 132 Pa. 455, 19 A. 281) and before advertisement and sale. In this case, there would have been no occasion for an appraisement unless the claim for exemption had been made.

*Sutman v. Hogsett,* 70 Pa. Superior Ct. 180, also cited by appellant, was a bankruptcy case and all the bank-

rupt's property had been turned over to the trustee, who sold it under an order of court, *before* a claim for exemption was filed. The claim should have been made in good time, for under the Federal Bankruptcy Act property claimed by a bankrupt in his schedule as exempt property does not pass to the trustee: *Lockwood v. Exchange Bank,* 190 U. S. 294, 299; *Chicago, B. & Q. R. Co. v. Hall,* 229 U. S. 511, 515; *Sharp v. Woolslare,* 25 Pa. Superior Ct. 251, 255; *Home Mut. Loan Assn. v. Goldstein,* 100 Pa. Superior Ct. 231, 233; but in special circumstances, the right of the bankrupt to $300 out of the proceeds of sale in the hands of the trustees has been upheld: *In re LeVay,* 125 Fed. 990; *In re Stein,* 130 Fed. 629. See also *In re Donahey,* 176 Fed. 458, 459, where the court said: "It may be, also, that where the only property out of which the bankrupt can secure his exemption is indivisible and above the value of that which is allowed him, a different rule should obtain, a sale in that case being the only alternative." In *In re Renda,* 149 Fed. 614, goods set aside for the bankrupt under his exemption claim were sold by the receiver under an agreement with the bankrupt and it was held that the bankrupt could claim the proceeds.

We see nothing in the language of the applicable statutes that, in circumstances such as are here present, requires us to hold that the judgment debtor lost his right to his exemption—which was claimed seasonably, within a few days after the levy, and before the sale was advertised—because his only piece of personal property seized in execution was an article over $300 in value.

Order affirmed.