## Dollar Savings & Loan Association v. Sigler

*Rea & Audino*, for petitioner.
*Marvin A. Luxenberg* and *Charles W. Garbett*, for respondent.

HENDERSON, *P. J.*, April 7, 1976—This is a petition for a declaratory judgment under the provisions of the Act of June 18, 1923, P.L. 840, its supplements and amendments; 12 P.S. §§831, et seq.

Petitioner, Dollar Savings Association, contends that as a result of an advertisement by letter from the solicitor of defendant (hereinafter "sheriff"), multitudinous litigation between the two parties is imminent unless this court grants declaratory relief. Petitioner is a savings and loan association which, in the ordinary course of its business, regularly enters into mortgage loan transactions and seeks writs of execution through mortgage foreclosure actions when its mortgagors are in default. Defendant sheriff, in the normal course of his duties, acts upon writs of execution by levy and sale of the mortgaged premises. The defendant sheriff has advised petitioner that, pursuant to revised Pa.R.C.P. 3123 (debtor exemption section) the sheriff will require in all mortgage foreclosure actions a minimum bid of $300 per defendant, that the sheriff will not accept any bid that will not return the debtor's exemption plus costs, and in lieu thereof, the sheriff will be obligated to choose, appraise and set aside a portion of the property in kind to cover the above amount.

Petitioner contends that Pa.R.C.P. 3123 is not applicable to mortgage foreclosures and thus claims that the sheriff is without power to act pursuant to said letter.

Petitioner asserts that, as a result of this letter, there exists an actual controversy between the parties which is of a sufficient nature to justify this court in taking jurisdiction and granting declaratory relief. Jurisdiction will never be assumed under the Declaratory Judgments Act unless the court is satisfied that an actual controversy, or ripening seeds of one, exists between the parties: Taylor v. Haverford Tp., 299 Pa. 402, 149 Atl. 639 (1930); Friestad v. Travelers Indemnity Company, 452 Pa. 417, 306 A. 2d 295 (1973).

It is apparent that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, for it is apparent that in every mortgage foreclosure action which arises in Lawrence County the sheriff will assert that he has the obligation and power to require the bid to be in accordance with the terms of said letter, while petitioner will assert that the sheriff lacks such power or obligation.

To answer the issues presented in this case, it is necessary to understand what facts lead up to the letter which was sent from the sheriff's solicitor to petitioner. In January of 1975, the Pennsylvania Supreme Court in Mayhugh v. Coon, 460 Pa. 128, 331 A. 2d 452 (1975), held that the statutory exemption provided by the Act of April 9, 1849, P.L. 533, sec. 1, 12 P.S. §2161, which declared that a portion of the debtor's property in the amount of $300 be exempt from levy and sale on execution, was an exemption which could not be waived either expressly or by implication. The court expressly overruled all cases to the contrary. Subsequent to the Mayhugh decision, supra, the Pennsylvania Supreme Court amended Pa.R.C.P. 3123 to reflect

this departure from prior case law. The original rule and the amended rule is set out below:

"Rule 3123. Debtor's Exemption

"(a) [Unless the right to exemption has been waived or lost the] A defendant [may claim his] entitled to a statutory exemption may claim it in kind or in cash at any time before the date of sale by notifying the sheriff of his claim and, if the exemption is claimed in kind, by designating the property which he elects to retain as exempt. Failure of the defendant to claim his statutory exemption shall not [of itself] constitute a waiver thereof."

Note: Bracketed material is to be deleted. Underscored material is to be added.

Petitioner's basic argument is that because Pa.R.C.P. 3123 is not one of the enumerated rules set forth in Pa.R.C.P. 3181 and does not affect or control Pa.R.C.P. 3180, et seq. (the Mortgage Foreclosure Rules), then the sheriff is without power to apply the debtors' exemption rule of Pa.R.C.P. 3123 to judgments on mortgage foreclosure.

Defendant sheriff asserts that the revised Rule 3123 is applicable to mortgage foreclosures by indicating that although the Mayhugh case, supra, was a case involving contractual waivers, it should not be limited to only contractual waivers but rather should be applied to any waiver of the debtor's exemption whatsoever. Defendant sheriff also asserts that because the decision contains no cautionary or limiting language, the wording of the decision applies to all types of creditors. Furthermore, defendant contends it is clear that the Supreme Court intended the Mayhugh decision, su-

pra, and the rules promulgated pursuant to it to apply to all types of executions against a debtor, but defendant fails to explain the Supreme Court's intent in not amending the rules governing mortgage foreclosure. Finally, the sheriff properly argues that this court should not construe the Rules of Civil Procedure as having the power and effect of overruling and limiting a valid State statute which grants a substantive right.

Assuming, arguendo, that debtor's exemptions granted through 12 P.S. §2161 (the statute interpreted by the Mayhugh case) are applicable to mortgages (note both parties in this case have assumed as a matter of fact that 12 P.S. §2161 applies to mortgages), the issue then becomes this—where a State legislature grants a substantive right which allows individual debtors to claim an exemption, but fails to enumerate the form in which the claim for exemption shall be made in the Rules of Civil Procedure, does this annihilate the substantive right conferred by the act? The answer is given by referring to Pa.R.C.P. 3231(42)[1] which indicates that any Act of Assembly providing immunity or exemption of property from execution, shall not be deemed suspended or affected by the Rules of Civil Procedure. Thus, petitioner's contention that the

---

1. Rule 3231. Acts of Assembly not Suspended
"The following Acts of Assembly shall not be deemed suspended or affected:
". . .
"(42) Any Act of Assembly providing immunity or exemption of property from. execution.
"This section is intended to preserve the numerous Acts of Assembly by providing for immunity or exemption of particular types or classes of property from execution. The practice and procedure as to claiming or waiving exemption or immunity is governed by these rules."

debtor is to be deprived of the right to his exemption simply because the Rules of Civil Procedure do not direct to the sheriff the manner in which a claim should be made, is without merit.

In addition, the Supreme Court in Hill v. Johnston & Parker, 29 Pa. 362 (1857), passed on this question of whether a substantive right was to be annihilated simply because of an omission by the legislature to point out the form in which the claim for exemption shall be made. The case involved the sale of land seized and sold under a judgment obtained upon a mortgage. The land was sold and the mortgage lien was paid off. The dispute involved a surplus of money which existed as a result of the sale. The mortgagor claimed an exemption as against the other judgment creditors (not a claim for an exemption by a mortgagor against a mortgagee) and made demand upon the sheriff for the surplus. The judgment creditors argued that since the legislature had not pointed out the particular manner in which a claim shall be made by a mortgagor against a judgment creditor when the sale is on a mortgage, then the substantive right is gone. The court in Hill, supra, at page 364, dismissed the argument by holding that "this view cannot be sustained. All that can be said is, that the act [The Debtors Exemption Act of 9, April, 1849, which is the same act at issue in this case] omits to point out the manner and form in which the claim in such case should be made. But this omission cannot *annihilate* the right of the debtor." (Emphasis supplied.)

Similarly, by analogy to the reasoning of Hill, supra, and by the direct language of Pa.R.C.P. 3231(42) which indicates that the substantive rights are not to be impaired by the procedural

rules, we would be obliged to hold that although Pa.R.C.P. 3123 (as revised) does not directly apply to mortgage foreclosures, the rights of the debtor to an exemption, as granted under 12 P.S. §2161, could not be impaired and the sheriff would be obligated to withhold the exemption for the debtor provided a mortgagor is a party within the scope of 12 P.S. §2161.

But, to simply hold that Rule 3123 as revised subsequent to Mayhugh, supra, does not impair the substantive rights to debtor's exemptions granted under 12 P.S. §2161 and that consequently the defendant sheriff is within his power and duties to withhold the debtor's property, pursuant to said substantive rule, does not adequately decide the issue before this court unless we decide that 12 P.S. §2161 grants the right to a debtor's exemption to a mortgagor as against a mortgagee.

Thus, the issue which must be decided upon before this court can adequately make a proper declaration of relief is whether or not a mortgagor is entitled to the benefit of the $300 exemption law under the Act of April 9, 1849, 12 P.S. §2161, as against his mortgagee, upon an execution issued on a judgment of mortgage foreclosure and levied on the mortgaged premises. If the Act of 1849 applies to mortgagors as against mortgagees, then, according to the above-mentioned reasons, the Mayhugh decision, supra, and its progeny, Rule 3123 would require the sheriff to pay $300 statutory debtor's exemption. On the other hand, if the legislature did not intend the mortgagor to be entitled to an exemption against his mortgagee under the Act of 1849, then it is apparent the sheriff would be without authority to withhold a debtor's exemption against the rights of the mortgagee.

Historically, the right of a debtor to hold his property, free from the claims of the creditor was not a common-law right. Rather, the traditional theory under the common law was that all of a person's property was liable for the payment of his debts. The debtor could also be imprisoned for failure to meet his obligations: Fell v. Johnston, 154 Pa. Superior Ct. 470, 36 A. 2d 227 (1944); Babis v. New York Extract Co., 120 Pa. Superior Ct. 73, 181 Atl. 846 (1935). Exemption of property from execution, which rests on considerations of public policy, is a creation of the statutes. Generally, it is the legislature and not the courts which has the power to declare exemptions: Commonwealth v. Berfield, 160 Pa. Superior Ct. 438, 51 A. 2d 523 (1947); Mamlin v. Genoe, 340 Pa. 320, 17 A. 2d 407 (1941). The public policy behind the exemption laws arises from legislative acts which seek to afford some measure of protection to the unfortunate debtor and his family. The statutes are created not only in the spirit of benevolence but also in the interest of the State in the personal well being of its citizens. By allowing the debtor to retain certain property free from the appropriation of the creditors, the legislature is extending to him the opportunity of self-support so that he will not become a burden upon the public: Sweeny v. Hunter, 145 Pa. 363, 22 Atl. 653 (1891); Maschke v. O'Brien, 142 Pa. Superior Ct. 559, 17 A. 2d 923 (1941). The philosophy of the exemption statutes was best described in Freeman v. Smith, 30 Pa. 264 (1858), at page 266:

"The Act of Assembly of 1849 was kind and beneficent legislation, in favor of the poor and distressed. It put it out of the power of the creditor, often grasping and avaricious, to strip a debtor and his family of their only means of subsistence. It

inaugurated a new era; for the first time, the law seemed to treat the inability to pay, not as a crime, but as a possible misfortune. It wore a rather benignant smile of encouragement for honest misfortune, than the ancient frown of condemnation upon inability to pay."

Pursuant to this philosophy, the legislature of Pennsylvania passed the Act of April 9, 1849, P.L. 533, sec. 1. The portion of the statute which is relevant to the issue of this case reads as follows:

"Section 2161. Amount of exemption

"In lieu of the property now exempt by law from levy and sale on execution, issued upon any *judgment obtained upon contract* and distress for rent, property to the value of three hundred dollars exclusive of all wearing apparel of the defendant and his family, and all bibles and school books in use in the family (which shall remain exempted heretofore), and no more, owned by or in possession of any debtor shall be exempt from levy and sale of execution or by distress for rent. 1849, April 9, P.L. 533, §1." (Emphasis supplied.)

Is a mortgagor a debtor who comes within the ambit of the above statute so that he is entitled to claim an exemption as against his mortgagee? To decide this question properly, it is necessary to look at the intent of the legislature together with the appropriate rules of construction.

Exemption statutes are in derogation of common law. Once the right is established, some liberality may be used in accomplishing their purpose (Masche v. O'Brien, supra); yet in determining whether the mortgagor is within the class entitled to an exemption, such acts must be strictly construed: Yoder's Estate, 341 Pa. 81, 19 A. 2d 139

(1941); Stein's Case, 118 Pa. Superior Ct. 549, 180 Atl. 577, affirmed 298 U. S. 94, 56 S. Ct. 699, 80 L. Ed. 1063 (1935).

The Act of 1849 affords relief to a judgment debtor only when the judgment is "obtained upon contract." Is a judgment obtained upon a mortgage foreclosure action a judgment "obtained upon contract"? The specific question has been answered by the Pennsylvania Supreme Court on many occasions in the late 1800's following the creating of the Act of 1849. The decisions have all stated consistently that a mortgagor as against a mortgagee is not entitled to the benefits of the exemption Act of 1849 because the judgment obtained upon the mortgage is not a judgment "obtained upon contract."

One of the earliest recorded decisions on the question held that a judgment upon a mortgage foreclosure is not a judgment "obtained upon contract." See Morgan v. Noud, 5 Clark 93, 1 Phila. 250, 7 L.I. 158 (1850). The issue before the court was whether in a case of a sale on a levari facias on a mortgage, the defendant mortgagor was entitled to the benefit of the exemption of $300 provided by the Act of April 9, 1849 (the same act before this court) as against the mortgagee. The court held, at page 94, "that the claim of the defendant [mortgagor] does not fall within the words of the act. It is not a levy and sale upon judgment *obtained upon contract* . . . There is, in strictness, no judgment obtained upon contract." (Emphasis supplied.) Morgan, supra, at page 94 held:

"The mortgagee has a special lien, and he may enforce it in Pennsylvania by an ejectment against the mortgagor in which proceeding it cannot be pretended that there could be any claim for the $300 exemption: . . . And it would not be pretended

that the mortgagor, though nominally a defendant, could set up any claim upon the proceeds of what had ceased to be his property. In short, it is very plain that the legislature meant by judgments upon contracts, judgments upon *personal contracts*, and that exemption can no more be claimed upon a *levari facias* upon a mortgage, than it could be upon a *habere facias possessionem* or an ejectment." (Emphasis supplied.)

In McAuley's Appeal, 35 Pa. 209, 11 Casey 209 (1860), Morgan, supra, was specifically affirmed when the court held that the Act of 1849 did not apply to all mortgages. In Gangwere's Appeal, 36 Pa. 466, 12 Casey 466 (1860), reasons were assigned, at length, for this same interpretation of the statute and the rule has been followed consistently in all subsequent cases deciding the question. The court held they could find no language in the exemption law of 1849 which could fairly be applied against mortgages. It based its opinion on the long-recognized distinction between actions in rem, or de terris, involved in mortgage foreclosures and actions in personam where judgment is taken against the person. The court affirmed the lower court's opinion which relied on Laucks' Appeal, 24 Pa. 426, 12 Harris 428 (1855).[2] In Laucks' Appeal, supra, at page 428, the court discussed the intent of the legislature regarding the interpretation of a "judgment obtained upon contract" and held that:

"The Act of 1849 applies to 'judgments obtained on contract.' By this is undoubtedly meant *judgments on contract of the person* against whom

---

2. Note that Laucks' Appeal, supra, was specifically overruled in Mayhugh, supra, as applied to the court's holding which dealt with the right to waive an exemption by contract.

they may be executed—that is, judgments against the persons of the parties which may be levied on the goods or lands of the debtors generally, and *not judgments de terris* against specific real estate, which may be executed against such estate, without any contract whatever between the plaintiff and the owner." (Emphasis supplied.)

The holding in Laucks' Appeal was that a debtor was not entitled to the exemption as against a mechanics' lien.

Gangwere's Appeal, supra, manifested the distinction brought out in Morgan, supra, and Laucks' supra, between in rem and in personam judgments. The court held:

"This expression, 'judgments obtained upon contract,' refers to the well known distinction in pleading between actions arising ex contractu and actions sounding in tort, and meant to give debtors the exemption in the former, but not in the latter class of actions.

"Now, although a mortgage is a contract, and the process authorized to issue thereon results in a judgment, yet, in common parlance, such a judgment is never spoken of as a judgment upon contract, but always as a judgment on mortgage. And it is a very peculiar judgment. It simply ascertains of record the breach of some condition in the mortgage, and authorizes a sale of the pledge by a writ of levari facias. It has not the lien of ordinary judgments, and it establishes *no debt against the mortgagor* . . . (emphasis added). We do not suppose that such a judgment was in the legislative mind when the statute of 1849 was enacted. If it had been, it would have been alluded to as a judgment on a mortgage, but there is no language there which can be so interpreted."

The court in Gangwere's, supra, also dealt with the logical question one must ask after reading 12 P.S. §2164 of the Act of 1849, which directs that the exemption "shall not be construed to affect or impair the liens of bonds, mortgages, or other contracts for the purchase money of the real estate of insolvent debtors." Thus, by the application of the doctrine of maxim expressio unius est exclusio alterius, one should suppose that when the legislature excluded "purchase money mortgages" it meant to *include* all other mortgages. The court answered this by indicating that the purpose of the provision of section 2164 was to relieve purchase money from the exemption provided for contract debts in general, and that the word "mortgages" was used in the provision not to contrast mortgages for purchase-money with all other mortgages, but merely as enumerating one of the forms in which purchase money might be secured. Similarly, the court in Morgan, supra, at page 94, answered this question directly by stating that the legislature, by merely excepting the purchase money from the act did not necessarily imply that the liens of all other mortgages were to be included. Rather, the court said: "It [purchase-money in mortgages] is plainly used as a particular in a class, the whole of which without regard to the form of the security, was for obvious reasons not intended to be embraced. The reason and the spirit of the act in excluding this class, is in favor of the construction, which also *excludes* mortgages." (Emphasis supplied.) See, also, Hildebrand's Appeal, 39 Pa. 133 (1861).

The holding of Gangwere's, supra, at page 471, was that "no mortgages, neither purchase-money mortgages nor others, were within the purview of the statute" because mortgage foreclosure is not a

judgment "obtained upon contract." (Emphasis supplied.)

Numerous Supreme Court decisions and other lower courts affirmed the decision that mortgages are not within the purview of the debtor's exemption statute: 12 P.S. §2161. See McAuley's Appeal, supra (1860); Nerpel's Appeal, 91 Pa. 334, 7 W.N.C. 549 (1879); Kauffman's Appeal, 112 Pa. 645, 4 Atl. 20 (1886); Craig v. Craig, 1 W.N.C. 613 (1875); Bryar's Appeal, 111 Pa. 81, 2 Atl. 344 (1885); Appeal of the City of Allentown, 109 Pa. 75 (1885); Hildebrand's Appeal, supra; Bower's Appeal, 68 Pa. 126 (1871); Huffort's Appeal, 10 W.N.C. 528 (1881); Pennsylvania Company for Insurance on Lives and Granting Annuities v. Bruner, 41 Pa. Superior Ct. 358 (1909); Peebles' Appeal, 157 Pa. 605, 27 Atl. 792 (1893). It is interesting to note that Gangwere's, supra, and its progeny cases have never been specifically overruled and that the issue decided in these cases, relating to the application of mortgages to the exemption statute of 1849, has never been decided in recent case law, presumably due to the practice of placing a waiver of exemption clause within the mortgage or accompanying bond by the banks as a condition to receiving the loan. This was done by the banks either because they were under the mistaken impression that mortgages were within the purview of the exemption statute or because they wished to insure against litigation involving claims for such exemptions by mortgagors.

It appears that Gangwere's, supra, in declaring that the exemption law of 1849 does not apply to a debt secured by a mortgage so as to exempt any part of the mortgaged premises from sale under proceedings of mortgage foreclosure, was consistent

with historical legal principles. This construction necessarily results from the nature of the mortgage contract. English law considered a mortgage to be a conveyance of the fee by the mortgagor to the mortgagee.[3] The conveyance was conditioned in such a manner that the payment of a specified sum at the proper time and place restored title in the mortgagor.[4] Default in such payment caused the title to the mortgagee to become absolute.[5] The modern Pennsylvania mortgage still retains some of the incidents of the English law theory on mortgages, though it differs in other respects. As between third parties, the mortgage is, for all practical purposes, merely an encumbrance or lien against the mortgaged property for the payment of money while, as between its parties (mortgagor-mortgagee), it is a defeasible conveyance representing an interest in land. See Bulger v. Wilderman et al., 101 Pa. Superior Ct. 168 (1931); Eastgate Enterprises v. Bank and Trust of Old York Road, 236 Pa. Superior Ct. 503, 345 A. 2d 279 (1975); 9 Thompson on Real Property, §4659 (1958).

Furthermore, the nature of a mortgage is manifested by the remedies which exist upon default. In Pennsylvania, there are three remedies available to the mortgagee upon a mortgage which is in default. First, an action in law on the bond, second, the common-law remedy of ejectment to gain possession (note: that the mortgagee's right of possession arises solely by virtue of the conveyance in the

---

3. Osborne, Mortgages, §332 (2 Ed. 1970).

4. Id. §5.

5. Chaplin, The Story of Mortgage Law, 4 Harv. L. Rev. 1, 9, 10 (1890).

mortgage), and third, the "action of mortgage foreclosure" pursuant to Pa.R.C.P. 1141-1148, and 21 P.S. §791 (see Ladner on Conveyancing in Pennsylvania, §§9:01-9:08 (3rd Edition).) If the mortgagee proceeds on either of the first two remedies, an exemption against the proceeds cannot be claimed by the mortgagors.

Considering these facts, one must ask whether the adoption of the third remedy by the mortgagee varies the relative rights of the parties. The logical answer is that the election of the one or the other remedy ought not to vary and does not vary the relative rights of the parties. The legislature did not intend such an inconsistent result in the right of the mortgagee: McAuley's Appeal, supra; Kauffman's Appeal, supra.

The nature of the remedy on a mortgage foreclosure action is in the nature of an in rem action. Pa.R.C.P. 1141(a) states: "As used in this chapter, 'action' means an action at law to foreclose a mortgage upon an estate, leasehold or interest in land but shall not include an action to enforce a *personal liability*," (emphasis supplied.) By this language, the legislature is maintaining the distinction between in rem and in personam proceedings as applied to mortgage foreclosure actions. A mortgage foreclosure action being an action in rem extends no personal liability to the mortgagor. Rather, it merely imposes a judgment against the land. The sole purpose of the judgment obtained through an action of mortgage foreclosure is to effect a judicial sale of the mortgaged property for the benefit of mortgagee: Meco Realty Company v. Burns, 414 Pa. 495, 200 A. 2d 869 (1964). The result of this distinction is that the judgment obtained

upon a mortgage foreclosure action is not a judgment "obtained upon a contract" as intended by the legislature in granting an exemption to a debtor: Gangwere's Appeal, supra; Morgan, supra; Laucks' Appeal, supra.

We, therefore, hold that the exemption law of 1849 does not apply to a debt secured by a mortgage so as to exempt any part of the mortgaged premises from sale in a mortgage foreclosure proceeding, or to permit a mortgagor to claim a debtor's exemption. Therefore, neither the Mayhugh decision, supra, nor the revised Pa.R.C.P. 3123 has affected a mortgagee's right. The defendant sheriff is without the power, authority or duty to take the money of the mortgagee and give it to the debtor, for to do this would be to extend the exemption law to mortgage debts, which the legislature has not done. So far as the legislature has expressed itself in the Act of 1849, "we recognize no right in a debtor to reclaim any part of the estate he has mortgaged to his creditor, whilst the mortgage-debt remains unsatisfied.": Gangwere's Appeal, supra, page 471.

Accordingly, the sheriff is directed in all actions of mortgage foreclosure to restrain from withholding a debtor's exemption for the benefit of the mortgagor.

## ORDER OF COURT

Now, April 7, 1976, it is ordered, adjudged, and decreed that Pa.R.C.P. 3123 has no application in actions of mortgage foreclosure, and that the Sheriff of Lawrence County has no legal authority in actions of mortgage foreclosures to grant a debtor exemptions to the mortgagor.