# Bryar's Appeal.

1. A purchaser of land from an assignee in bankruptcy, subject to a mortgage given by the bankrupt, takes, as respects the bankrupt, his equity of redemption and nothing more. If he afterwards purchases the mortgage and sells the land under a judgment recovered on the mortgage, and he himself becomes the purchaser, the wife's right of dower is divested by the sale.

2. A mortgage does not necessarily merge or become extinct by being united in the same person with the fee. When a person becomes entitled to an estate subject to a charge for his own benefit, he may take the estate and keep up the charge. The question in such case is upon the intention, actual or presumed, of the persons in whom the estates are united.

3. Moore *v.* Harrisburg Bank, 8 Watts, 138, followed.

1 AMERMAN—6

 October 27th, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. PAXSON, J., absent.

APPEAL from the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term, 1885, No. 63.

This was an appeal by Jane Bryar from a decree of the said court dismissing a bill in equity, wherein the said Jane Bryar was plaintiff and Thomas Campbell was defendant.

The bill alleged:

1. That the plaintiff, Jane Bryar, was the widow of ·James Bryar, of the City of Pittsburgh; that he died August 30th, 1881, intestate, leaving her and seven children surviving him.

2. That he died seised of the undivided half of about seven acres of land situate in the twenty-first ward of the City of Pittsburgh.

3. That during the time he was seized in fee of said land there were improvements upon it, which are still upon it.

4. That, as widow, she is entitled by law to her dower in the said undivided one half of the said seven acres of land of which she had not been divested during his life, nor since.

She therefore prayed:

1. That an account of the rents and profits of said undivided one half of said lands might be taken, and that one sixth part might be paid her.

2. That she might have assigned to her, as her dower, one sixth part of said·lands for life.

3. General relief. ·

The defendant admitted the allegations made in the first, second and third paragraphs of plaintiff's bill, but denied that the plaintiff was entitled to dower in said land.

The plaintiff then filed an amended bill, alleging:

1. On the 1st of October, 1874, James Bryar executed two mortgages on the seven acres of land mentioned in plaintiff's bill filed in this case, one to Thomas McClintock for the sum of $3,000, the other to Ed. R. James for the sum of $2,000. Both of these mortgages were recorded. The mortgage to Ed. R. James was foreclosed and judgment entered thereon the 12th day of April, 1878, for $2,355.81; the one to McClintock was foreclosed and judgment entered thereon the 12th day of April, 1878, for $3,533.75, in Court of Common Pleas, No. 1, of Allegheny county.

2. The said James Bryar was, on the 8th· of January, 1877, decreed and adjudged a bankrupt upon the petition of his creditors, in District Court of United States, Western District of Pennsylvania; and Robert Arthurs was, on the 8th day of February, 1877, chosen assignee of his estate by the

[Bryar's Appeal.]

creditors, at a meeting called for that purpose ; and the register in bankruptcy, by virtue of the authority vested in him, by his deed of assignment bearing date the     day of      , 1877, conveyed to said assignee the said seven acres (*inter alia*) as the property of said James Bryar.

3. Upon the petition of the said Robert Arthurs, assignee, the said District Court of the United States did, on the 19th day of May, 1877, order and direct the sale of said seven acres divested of all liens—and subsequently, did order and direct that the same should be sold, divested of all liens, or subject only to the first mortgages, amounting to about six thousand dollars, as the assignee might deem to the interest of said estate.

4. After due and legal notice by advertisement, the said assignee, Robert Arthurs, did as directed by said court, expose the said before-described piece of land with the buildings, and subject to the first mortgages, viz., the said two mortgages mentioned in paragraph first of this bill, to public sale, and did then and there sell the same (subject only to the payment of said mortgages) to the said Thomas Campbell, the defendant, for the sum of three thousand five hundred dollars ; and said assignee made return of said sale to said district court, which was, on May 21st, 1878, confirmed absolutely, and said assignee ordered to make and deliver to said Thomas Campbell, the purchaser, a deed for the same, subject to the payment of said mortgages, as by reference to the records of said court will more fully appear. And in pursuance of said order and sale, the said Robert Arthurs, assignee as aforesaid, did, on the 22d day of May, 1878, execute a deed to said Thomas Campbell for the aforesaid seven acres of land, subject to the payment of the aforesaid two mortgages ; said deed is recorded in the recorder's office of Allegheny county.

5. After the confirmation of said sale to said Campbell, and the execution by said Robert Arthurs, assignee as aforesaid, of the aforesaid deed to said Thomas Campbell for said seven acres, viz.: On the 7th of June, 1878, Wm. B. Rodgers, as the attorney of said Thomas Campbell, purchased the judgments obtained on the aforesaid two mortgages, with money furnished him by said Thomas Campbell for that purpose, and had them assigned to himself. Afterwards, to wit: On the 15th of August, 1879, an *al. levari facias*, at No. 277 September Term, 1879 (at the instance of said W. B. Rodgers, as attorney of said Thomas Campbell), was issued against said James Bryar on said judgment No. 204 June Term, 1878, by virtue of which the sheriff of Allegheny county exposed to public sale the said seven acres of land, and sold the same

to W. B. Rodgers for $50, and executed, acknowledged in open court, and delivered to said purchaser his official deed therefor, which deed is duly entered in said Court of Common Pleas, No. 1, in Sheriff's Deed Docket 3, p. 604.

6. The said W. B. Rogers bought said seven acres of land at the sheriff's sale aforesaid, as attorney for said Thomas Campbell, and for his benefit, and after the execution of said sheriff's deed to said W. B. Rodgers, he the said W. B. Rodgers, by his deed dated November 18th, 1881, recorded in the recorder's office of Allegheny county, conveyed said land to said Thomas Campbell, the respondent.

Your oratrix, therefore, in addition to the relief prayed for in the original bill, asks the court to decree that the sheriff's sale aforesaid to said W. B. Rodgers, did not divest her dower in said land.

The defendant answered the plaintiff's amended bill as follows:

1. I believe the statements of paragraphs 1, 2 and 3 to be true.

2. Robert Arthurs, assignee of James Bryar, in compliance with the orders of court, exposed the seven acre tract to public sale, free from all liens, except the first mortgages on said tract made to Edward R. James and Thomas McClintock, and sold the same to me at said sale, free from all liens, except the said two mortgages, and upon return of sale made, the same was confirmed, and a deed therefor made to me according to the terms of sale. I expressly deny that I ever agreed to pay said mortgages.

3. Judgments having been obtained on said mortgages, the tract therein described was advertised at sheriff's sale, and in order to protect myself I furnished Wm. B. Rodgers nearly all the money required, and he purchased said judgments and had them assigned to himself, and subsequently the said tract was sold at sheriff's sale, and purchased by him.

4. The statements in the sixth paragraph are true. After the sale to W. B. Rodgers, as aforesaid, I repaid him the amount of his own money which he had advanced to purchase said mortgages, and he made a deed to me for the premises.

The plaintiff filed a replication, and Alfred Kerr, Esq., was appointed Master, who heard the parties, and reported as follows:

That the plaintiff, Jane Bryar, is the widow of James Bryar, deceased, having been married to him in the year 1852, and he having died August 31st, 1881; and that the said James Bryar died intestate, leaving said widow and seven children.

That on the 10th day of June, 1856, by the deed of John

McElroy to S. B. McElroy and James Bryar, the said James Bryar became seised in fee simple of the undivided one half of the seven acres of land described in plaintiff's bill.

That on the 17th day of March, 1863, by the deed of S. B. McElroy and wife to said James Bryar, the latter became seised in fee simple of the other undivided one half of said seven acres, thereby becoming the owner in fee simple of the whole of the same.

That said James Bryar and his wife, the plaintiff, by their deeds to James Brennan, dated November 27th, 1870, to Henry Falkenstein, dated May 7th, 1872, and to Barbara Weinkoff, dated August 7th, 1872, sold and conveyed three several small lots, together containing about one fourth of an acre, being a portion of said seven acres to the persons named respectively.

That on October 1st, 1874, the said James Bryar executed two mortgages on said seven acres, excepting the three lots sold as aforesaid; one in favor of Thomas McClintock for $3,000, and the other in favor of E. R. James for $2,000, and each payable in two years.

That on the 8th of January, 1877, the said James Bryar, on petition of his creditors, was adjudged a bankrupt by the District Court of the United States for the Western District of Pennsylvania, and on the 8th day of February, 1877, Robert Arthurs was duly chosen assignee of his estate, to whom on the 24th day of February, 1877, the Register in Bankruptcy, by his deed of assignment, conveyed all the estate of said James Bryar, bankrupt, including the said mortgaged premises, being the unsold portion of said seven acres.

That on petition of said assignee, the said District Court of the United States, by its order dated June 2d, 1877, and its further order dated November 24th, 1877, directed the said land, inter alia, to be sold by the assignee for cash, free from liens, or subject to the liens of the mortgages aforesaid.

That on the 30th day of March, 1878, pending said order of sale in bankruptcy, writs of scire facias were issued on said mortgages of E. R. James and Thomas McClintock, and on April 12th, 1878, judgments were had—in the former for $2,355.81 and in the latter for $3,533.75—and soon after writs of levari facias were issued on both judgments, which writs were stayed by plaintiff's attorney on the day of sale.

That on the 6th day of May, 1878, the assignee in bankruptcy made return to the said District Court of the United States, showing that he had sold the "seven acres, more or less," to Thomas Campbell, the defendant, for the sum of $3,500.00, free from all liens except said mortgages of E. R. James and Thomas McClintock, which return was on May

28th, 1878, confirmed absolutely by said court,.and the assignee was ordered and directed to make a deed for the same to the defendant, Thomas Campbell, the purchaser, on compliance with the terms of sale.

, That on the 22d day of May, 1878, the said assignee made and delivered his deed, conveying for the consideration of $3,500.00, the said land to the defendant, Thomas Campbell, subject to the said mortgages of E. R. James and Thomas McClintock, and that said deed declares, among its recitals, that said property was sold at public sale to the defendant "subject only to the payment of said mortgages."

That in the month of June, 1878, the defendant became, through a purchase made by and in the name of W. B. Rodgers Esq., his attorney, the owner of the judgments obtained on said mortgages, and that the money was furnished by the defendant to effect said purchase.

That in the month of September, 1878, the said defendant, Thomas Campbell, purchaser at assignee's sale, went into possession of said land under and by virtue of said deed from the assignee.

That in the month of August, 1879, W. B. Rodgers, Esq., the attorney of said Thomas Campbell, caused to be issued an alias writ of *levari facias* to No. 277, September Term, 1879, on said judgment obtained on the mortgage of E. R. James, by virtue of which the sheriff of Allegheny County, on the 6th day of September, 1879, sold the said premises for $50.00 to the said W. B. Rodgers, who purchased the same for the benefit of his client, the defendant, and said sheriff on the 20th day of September, 1879, made, acknowledged and delivered his deed for the same to said purchaser, who by his deed dated November 18th, 1881, conveyed the same to the defendant.

The question presented for the decision of the Master in this case is as follows:

Is the plaintiff, Jane Bryar, on the foregoing facts, entitled to dower in the undivided one half of the unsold portion of the seven acres of land described in the bill, which was acquired by her deceased husband by the deed of John McElroy to S. B. McElroy and himself?

The defendant became the owner of the unsold portion of said seven acres of land, subject to the payment of the mortgages of E. R. James and Thomas McClintock, in May, 1878, by virtue of a sale in bankruptcy, and a deed from the assignee, conveying all the right, title and interest of the plaintiff's husband, James Bryar, since deceased. In June following he became the owner of the judgments which had been obtained on said mortgages, through a purchase made by his

attorney. In September following, (1878,) he went into possession of said land, under and by virtue of his deed from the assignee in bankruptcy. In August, 1879, after being in possession, as owner, for about eleven months, he caused an *alias lev. fa.* to be issued on the judgment obtained on the mortgage of E. R. James to No. 277, September Term, 1879, in the Court of Common Pleas No. 1, of said county, upon which writ the said property was sold by the sheriff to defendant's attorney, who received the sheriff's deed therefor, about September 20th, 1879, and afterwards conveyed the property to his client, the defendant. There is no doubt that the defendant was the real purchaser both of the land at the sheriff's sale and of the judgment on which it was sold.

Under the decision in the case of Lazear *v.* Porter, 6 Norris, 513, the purchaser of real estate at a sale in bankruptcy takes subject to the right of dower of the bankrupt's wife. The defendant, therefore, by his purchase at the sale in bankruptcy, took said land subject to the plaintiff's right of dower, as well as subject, by the terms of sale, to the payment of said mortgages. By the death of her husband, in August, 1881, her right of dower became a vested estate in dower, unless the sheriff's sale in September, 1879, had divested her right.

It is undoubtedly the law in our state that a judicial sale on a valid lien divests dower. Did, then, the judgment obtained on said mortgage of E. R. James retain its validity as a lien, notwithstanding the fact that the defendant voluntarily purchased the same after having previously purchased the land subject to the payment of said mortgage? If it did, then the sale by the sheriff conveyed a good title to the land, divested of the plaintiff's right of dower.

The Master finds this question determined by the Supreme Court in the case of James Bryar and Jane Bryar, his wife, in right of said Jane Bryar *v.* John W. Beckett, William B. Rodgers and Thomas Campbell, at No. 184, October and November Term, 1881: 30 Pitts. L. J., old series, p. 12. In that case were involved the essential facts of this case. It was virtually between the same parties, concerned the same land, and involved the question of law above stated, which was determined adversely to the plaintiff, the Supreme Court, in effect, deciding that the said judgment was a valid lien in the hands of its purchaser, the defendant, and that the sheriff's sale thereon conveyed to him a good title.

The Master is bound by this decision and is therefore of opinion that the plaintiff is not entitled to dower as claimed, and that the bill should be dismissed; and as required by his order of appointment, he respectfully suggests the following form of decree, viz:

And now                , this cause came on to be heard at this term, on bill, answer, amended bill, answer to amended bill, testimony and the report of the Master, and exceptions thereto, and having been argued by counsel, upon consideration thereof by the court, it is ordered, adjudged and decreed that the bill of plaintiff be dismissed, and that she pay the costs.

The plaintiff and the defendant excepted to the report of the Master.

The court filed no opinion on the exceptions but dismissed them and entered the following decree.

And now, 20th Feb., 1885, this cause came on to be heard on bill, answer, replication, Master's report and exceptions thereto, and was argued by counsel, whereupon it is ordered, adjudged and decreed that the bill be dismissed at the plaintiff's costs, and the Master's fee is fixed at fifty dollars by consent of counsel.

The plaintiff thereupon took this appeal assigning for error the overruling of her exceptions to the Master's report and the decree of the court dismissing her bill.

*S. H. Geyer*, (*John N. McClowry*, with him) for appellant. —The wife's contingent right of dower is not divested by an assignee's sale in bankruptcy of her husband's interest in the land: Lazear *v.* Porter, Assignee, 6 Norris 513; Porter, Assignee *v.* Lazear, 109 U. S. Rep. 84.

It does not make any difference whether the property is sold free or subject to liens, the right of dower still remains: Kelso's Appeal, 12 W. N. C. 475.

When Campbell paid off the mortgages, their liens on the land thereby became extinct, and a sale thereon by the sheriff would be void. "If the plaintiff, in a judgment, became the owner of the land upon which that judgment is a lien, the lien thereby becomes extinct by operation of law, and no subsequent sale of the land by the sheriff, upon that judgment will vest a title in the purchaser:" Koons *v.* Hartman, 7 Watts, 20.

Mr. Justice GORDON, delivering the opinion of the court in The Dollar Savings Bank, for use, *v.* Burns, 6 Norris 491, says: Having bought the land subject to the mortgage and having afterwards paid off the mortgage, he did that which he was in duty bound to do. So we contend here that when Campbell paid off these mortgages he did that which, by the terms of the sale, it was his duty to do. They constituted part of his bid, and he had no legal right to use them for the purpose of divesting an estate subject to which he purchased the property. The same doctrine enunciated in Hansell *v.* Lutz, 8 Harris, 284.

*Thomas M. Marshall*, (———*Imbrie* and *Wm. B. Rodgers*, with him) for appellee.—Thomas Campbell purchased at the bankrupt sale the equity of redemption which existed in James Bryar. This was subject to the legal title of the mortgagees, E. R. James and Thomas McClintock. The counsel of Wm. Campbell found that two outstanding charges existed against the property, one the mortgages, the other the contingent dower right of Jane Bryar. W. B. Rodgers purchased in his own name the mortgages and proceeded to sell the property. The mortgages were kept afoot for the express purpose of perfecting the equitable title purchased at the bankrupt sale. Was this a legal exercise of power? The plaintiff in error contends first, that Campbell agreed to pay these mortgages as a part of his bid. This no fact sustains. There was no personal duty or obligation of payment. It was discretionary with him whether he should stand on the equity of redemption which he had purchased, or go farther and perfect his equity into a legal title. It requires neither argument nor citation of authority to sustain this position.

The plaintiff in error further contends that the purchase of the mortgages of E. R. James and Thomas McClintock worked a merger by operation of law. It is true no authority is cited for this position, because none exists. There are two answers to this claim. First, a legal title does not merge in an equity. "A legal estate cannot merge in an equitable one:" Penington *v.* Coates, 6 Wharton 282, "equity does not favor mergers, and in law mergers are said to be odious."

"A merger is for the benefit of him in whom the two interests unite; it will never take place when it is against his interest, or when it is most for his advantage to keep the charge alive:" Wallace *v.* Blair, 1 Grant 75.

"A mortgage does not necessarily merge or become extinct by being united in the same person as the fee, but on the contrary, when it was the intention of the parties that it should not merge, but continue to subsist for the protection of the owner against subsequent incumbrances, he may keep it afoot, sue out a *scire facias* in the name of the mortgagee against the mortgagor, with notice to himself, obtain a judgment, and sell the estate mortgaged:" Moore *v.* Harrisburg Bank, 8 Watts 138.

"It is only in those cases where it is perfectly indifferent to the party in whom the interests have united, whether the charge or term should not subsist:" Penington *v.* Coats, 6 Wharton 282.

"Merger depends generally, but not universally, on the intention of the party to be affected, an intent to prevent is to be presumed wherever it was his interest that the term or

incumbrance should not sink in the inheritance, and that such a consequence takes place only when it is indifferent to him: " Richards *v.* Ayres, 1 W. & S. 485 ; Wilson *v.* Gibbs, 4 Casey 151 ; Dougherty *v.* Jack, 5 Watts 456 ; Turner *v.* Waterson, 4 W. & S. 171 ; Kline *v.* Bowman, 19 Penn. St. 24 ; Shertzer *v.* Herr, 19 Penn. St. 34.

Mr. Justice TRUNKEY delivered the opinion of the court, January 4th, 1886.

Robert Arthurs, assignee of James Bryar, a bankrupt, sold and conveyed the land to Thomas Campbell, for consideration of $3,500, subject to the lien of two mortgages, one to T. McClintock and the other to E. R. James. Subsequently, said Campbell by his attorney, purchased said mortgages and the judgments which had been obtained thereon, issued a writ of *levari facias* on one of them by virtue of which the land was sold at sheriff's sale for $50, and on November 18th, 1881, the attorney conveyed the title acquired at the sheriff's sale to Campbell.

By the purchase at the assignee's sale Campbell obtained Bryar's equity of redemption, and as respects him nothing more. He bought the land subject to the mortgages, and there is no way that he could hold the land under that purchase and compel Bryar to pay the whole or a part of the debt. His bid was in addition to the debts secured by the mortgages. He contracted no personal liability, and was at liberty to suffer the mortgagees to cause the land to be sold at judicial sale, in which case he could have bought it himself. But when he chose to hold the equity of redemption, and purchased the debt he freed Bryar from liability for its payment, and can collect no part thereof out of Bryar's other property, if he has any: Dollar Savings Bank *v.* Burns, 87 Pa. St. 491.

A sheriff's sale of land on a judgment divests the dower of the debtor's wife. And if necessary for the payment of a decedent's debts to sell real estate, the sale thereof by order of court for that purpose divests the widow's dower or estate under the intestate laws. Mortgages are commonly called securities for payment of money, or performance of contract. They are our highest form of securities; in some respects more than a lien, for they are formal pledges of the land. Therefore, no part of mortgaged land is exempted from sale in satisfaction of the mortgage by virtue of the statute exempting "property to the value of three hundred dollars "from levy and sale on execution, issued upon any judgment obtained upon contract." Gangwere's Appeal, 36 Pa. St. 466. And the statute which provides that the " widow or children of any decedent, dying within this commonwealth, may retain

either real or personal property belonging to said estate to the value of three hundred dollars, and the same shall not be sold, but suffered to remain for the use of the widow and family," has no force against a mortgage given by the decedent in his lifetime: Nerpel's Appeal, 91 Id. 334. A first mortgage is unaffected by a sheriff's sale upon a subsequent lien ; the purchaser at such sale buys the equity of redemption. The mortgagee, like a purchaser, is not prejudiced by a secret equity, or title, of which he had no knowledge or notice, and where there were no circumstances to put him on inquiry. When Bryar's land was sold by the assignee, he was bankrupt, his whole estate was liable for his debts, and after that sale he had no equitable interest in the land. His wife, under the laws of this commonwealth, had no estate in his land that could stand against his creditors. The sale by the assignee in bankruptcy did not divest her dower, but she had no equity to prevent a sheriff's sale on a judgment against her husband. Campbell acquired the title of the mortgagees and their right of possession, and had he not been in possession, he could have recovered in ejectment. The sheriff's sale is unimpeached for fraud—it evidences that the land was worth no more than the mortgage debts.

A mortgage does not necessarily merge or become extinct by being united in the same person with the fee. When a person becomes entitled to an estate subject to a charge for his own benefit, he may take the estate and keep up the charge. The question in such case is upon the intention, actual or presumed, of the persons in whom the estates are united: Moore v. Harrisburg Bank, 8 Watts, 138. Campbell had an interest in preserving the mortgages until after foreclosure and sale, for the purchaser at such sale would take as good title as the mortgagor appeared to have. If the mortgagee had no knowledge of an adverse title he had a right to perfect his title if he could, but he was not bound to buy the property if another should bid a larger sum than he cared to pay. The question is not whether he could purchase the mortgage and use it to compel the debtor to pay it, but whether he can use it to protect himself against adverse claims which could not avail against the mortgagee, or any one holding under him. At the sheriff's sale upon the judgment on the mortgage, all persons were as free to bid as if there had been no sale by the assignee, and the purchaser took title under the mortgagee. It was said by the late Chief Justice that Campbell, unless he expressly or by necessary implication agreed to pay the mortgages, had an undoubted right to secure his own title by purchasing them and proceeding to perfect his title under them: Bryar and Wife v. Beckett

*et al.*, 13 Pitts. L. J., N. S. 12. In that case the present appellant and appellee were the parties really interested, and the plaintiff claimed to recover on an equitable title, of which the mortgagees had no knowledge. The judgment was entered against the plaintiff because the sheriff's sale vested the title in Campbell. In this action the plaintiff claims dower in part of the tract which was not included in her equitable title, and her counsel has made a very ingenious argument in support of her claim, but we are not convinced that the controling principle in the recent decision should be overruled.

Decree affirmed, and appeal dismissed at the costs of appellants.

STERRETT and CLARK, JJ., dissent upon the ground that the purchase by Campbell at the assignee's sale, being subject, not only to the lien of the mortgages, but to the widow's dower also, he could not, after the assignment to him of the former, use them as a means of defeating the latter.