Submitted on briefs September 23, affirmed October 6, rehearing denied November 10, 1914.

# BLACKFORD *v*. BOAK.*

## (143 Pac. 1136.)

### Exemptions—Nature of Rights—Statutory Provisions.

1. Section 227, subdivision 7, L. O. L., exempting certain property from execution, though in derogation of the common law, is to be liberally construed, being remedial in character.

[As to validity of statute extending or lessening exemption from execution, see note in Ann. Cas. 1912B, 259.]

### Exemptions—Property Exempt—Proceeds of Sale of Exempt Property.

2. Under Section 227, subdivision 7, L. O. L., exempting from execution the team necessary to enable any person to carry on his trade or by which he habitually earns his living, and providing that no article, nor the proceeds of sale thereof, shall be exempt from execution for its price, the proceeds of sale of a team habitually used in earning a living, which the owner intended to invest in another team, were exempt.

[As to whether proceeds of exempt property is subject to execution, see note in 66 Am. St. Rep. 381.]

### Exemptions—Property Exempt—"Proceeds."

3. The term "proceeds," as used in Section 227, subdivision 7, L. O. L., providing that no article, nor the proceeds of sale thereof, shall be exempt from execution for its price, means a sum of money paid, or the acknowledgment of a debt created, to evidence the consideration for a sale of exempt personal property.

### Evidence—Judicial Notice—Wet Season.

4. Judicial notice will be taken of the wet season, which occurs in Oregon during the winter months.

### Exemptions—Property Exempt—Proceeds of Sale.

5. Where a team used for farming was sold, and a note taken for the price, December 13, 1913, it cannot be said as a matter of law, in view of the wet winter season in Oregon, that on May 31, 1914, an unreasonable time had elapsed for the investment of the proceeds in another team.

### Execution—Supplemental Proceedings—Pleading.

6. Where an answer to an order, requiring a defendant to answer under oath concerning a note held by him, alleged that it was exe-

*As to the purpose for which horses are used affecting exemption under statute specifically exempting horses, see note in 3 L. R. A. (N. S.) 693.

Upon the question as to how far proceeds of exempt property retain exempt character, see note in 19 L. R. A. 33.          REPORTER.

cuted in payment for a span of horses which he had sold to secure another team, that the span was habitually used upon his farm in making his living and was exempt from execution, and that if the defendant is compelled to surrender the note he will be without means to purchase another span, while not expressly averring he has no other team, authorizes that inference.

[As to supplemental proceedings, see note in 100 Am. Dec. 500.]

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is a proceeding supplemental to an execution, to compel the surrender of a promissory note in order that the proceeds thereof might be applied on account of a judgment.   From affidavits filed on behalf of the plaintiff, Dan Blackford, it appears that he secured a judgment against the defendants, Gussie M. Boak, Walter Boak and John Ridenour.   An execution was issued on the judgment, and, obeying the command of the writ, the sheriff of Douglas County, Oregon, served a notice of garnishment upon Ridenour, who, for answer, admitted that he was the owner and holder of a promissory note executed to him December 13, 1913, by Melvin Richardson, for $275, payable on or before two years, and given to evidence the purchase price of a span of horses, but that defendant refused to surrender the note.   Upon the plaintiff's application therefor, an order was issued by the court, requiring Ridenour to appear before it at a stated time, and answer under oath concerning such property, restraining him in the meantime from selling, transferring or otherwise disposing of it.   At the time designated he filed an answer, admitting that he was the owner and holder of the note, and alleging that it was executed in payment of a span of horses owned by him, and which he had sold in order to secure another team; "that the span of horses so sold, and for which said

note was received, was habitually used by said defendant Ridenour upon his farm in making his living, and was exempt from execution; that said span of horses were nervous and becoming hard to manage by said defendant Ridenour because of his age, and for that reason were sold, with the intention of using the proceeds to supply another horse or span of horses; that the defendant is unable to earn a living without a horse or span of horses; that the defendant Ridenour habitually makes his living by farming, and a span of horses is absolutely required by him in order to make his living; that if the said defendant Ridenour is compelled to surrender said note, he will be without means or funds with which to purchase another horse or span of horses to take the place of those so sold.''

A demurrer to the answer, on the grounds that it did not state facts sufficient to constitute a defense, was overruled, whereupon the motion to require Ridenour to surrender the note was denied; the court holding that such property was exempt from execution. From this order the plaintiff appeals.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief with an oral argument by *Mr. Carl E. Wimberly.*

For respondent there was a brief with an oral argument by *Mr. Oliver P. Coshow.*

MR. JUSTICE MOORE delivered the opinion of the court.

Are the proceeds arising from the voluntary sale of exempt personal property liable to execution, when the fund so obtained is intended to be reinvested in exempt property? If so, is the answer herein suffi-

cient to bring the case within that principle? In the absence of an enactment, the rule governing the first inquiry is thus stated by a text-writer:

"When exempt personal property is exchanged for property in kind or like character, the property received in exchange is also exempt; but when property is sold for money, or is exchanged for merchandise or other property not exempt under the law, the money or the property received in exchange is liable to execution": 18 Cyc. 1443.

Our statute prescribing the kind of chattels of a judgment debtor that are not liable to seizure and sale contains clauses which read:

"All property * * of the judgment debtor shall be liable to an execution, except as in this section provided. The following property shall be exempt from execution: * * 3. The * * 'team' * * necessary to enable any person to carry on the trade, occupation or profession, by which such person habitually earns his living, to the value of $400. * * 7. No article of property, or if the same has been sold or exchanged, then neither the proceeds of such sale nor the article received in exchange therefor, shall be exempt from execution issued on a judgment recovered for its price": Section 227, L. O. L.

1. Though a statute exempting property from execution is in derogation of the common law, such enactment, being remedial in character, is to be liberally construed: 2 Freeman, Executions (3 ed.), § 208. This author, in the section noted, discussing this subject, remarks:

"Wherever this rule prevails, and it does not clearly appear whether certain property is or is not embraced within the exempting statute, the debtor will generally be allowed the benefit of the doubt, and suffered to retain the property."

2. It will be kept in mind that Section 227, subdivision 7, L. O. L., prevents a judgment debtor from taking advantage of his own wrong by exchanging an article of exempt personal property for another of the same class, and asserting the latter to be exempt from execution issued on a judgment recovered for the price of the former. As all property of the judgment debtor is liable to execution, except as provided in the section referred to, it was unnecessary in subdivision 7 of the enactment to use the word "proceeds," unless it was intended that such avails should also be exempt from execution issued on a judgment recovered for any debt other than the price of the exempt article of personal property so sold. Construing that subdivision in accordance with the liberal rule mentioned, it would seem necessary to follow that, since such proceeds are liable to an execution issued on a judgment recovered for the purchase price, the converse of this postulate is applicable, and hence the avails so obtained are exempt from seizure and sale pursuant to any other judgment.

3. The term "proceeds," as thus employed evidently means a sum of money paid, or the acknowledgment of a debt created, to evidence the consideration for a sale of exempt personal property. Such medium of exchange, when received with intent of being reinvested in other like chattels, is by fair implication of the statute also exempt from execution: *Cullen* v. *Harris,* 111 Mich. 20 (69 N. W. 78, 66 Am. St. Rep. 380, and notes).

4, 5. The promissory note in question was executed December 13, 1913. The judgment herein was rendered May 20, 1914, and 11 days thereafter a notice of garnishment was served. Judicial notice of the

wet season, which occurs in Oregon during the winter months, will be taken, and based upon such knowledge it cannot be said, as a matter of law, that an unreasonable time had elapsed until Ridenour would require another team to pursue his farming: *Tillotson* v. *Wolcott,* 48 N. Y. 188.

6. The answer does not expressly aver that Ridenour has no other team with which he habitually earns a living by farming, but such fact is fairly to be inferred from the allegations of that pleading.

The order brought up for review was proper under the circumstances, and it is affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE RAMSEY concur.

MR. JUSTICE BURNETT dissents.

