**Lester G. PERKINS and Edith Perkins**

**v.**

**Frederick T. McGONAGLE et al.**

Supreme Judicial Court of Maine.

July 30, 1975.

Howard T. Reben, Josephine L. Citrin, Portland, for plaintiffs.

Frederick T. McGonagle, Gorham, Francis C. Rocheleau, Westbrook, Thomas P. T. Doyle, Law Student, Peter G. Ballou, Asst. Atty. Gen., Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

This case is the outgrowth of other independent litigation commenced in January of 1972 in which one of the present defendants, Ralph M. Willis, had sued the plaintiffs herein, Lester and Edith Perkins, husband and wife, in the Ninth District Court, Division of Southern Cumberland to recover rent allegedly due in the amount of $975.00.

As an incident of that District Court action, another of the defendants herein, Frederick T. McGonagle, acting as attorney for Willis, procured a writ of attachment issued in compliance with D.C.C.R. 4A as it then read.[1] Pursuant to this writ, on January 17, 1972, the other of the three defendants, Cumberland County Deputy Sheriff Richard R. Mannette, attached a 1969 Ford pick-up truck owned by Mr. & Mrs. Perkins.

1. In January of 1972 the text of D.C.C.R. 4A was: "Rule 4A of the Maine Rules of Civil Procedure governs procedure in the District Court." Rule 4A M.R.C.P., as here material, then provided:

" . . .

"(b) Writ of Attachment: Form. The writ of attachment shall bear the signature or facsimile signature of the clerk, be under the seal of the court, contain the name of the court, the names and residences of the parties and the date of the complaint, be directed to the sheriffs of the several counties or their deputies, and command them to attach the goods or estate of the defendant to the value of the amount of plaintiff's. demand for judgment, together with a reasonable allowance for interest and costs, and to make due return of the writ with their doings thereon.

"(c) Same: Service. The writ of attachment may be procured in blank from the clerk and shall be filled out by the plaintiff's attorney as provided in subdivision (b) of this rule. The plaintiff's attorney shall deliver to the officer making the attachment the original writ of attachment upon which to make his return and a copy thereof. When the summons and complaint are served upon the defendant as provided in Rule 4, the defendant shall also be served with a copy of the writ of attachment with the officer's indorsement thereon of the date or dates of execution of the writ. Any attachment shall be made within 30 days after the date of the complaint . . . ."

Approximately five months later, on June 12, 1972, the Supreme Court of the United States decided *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The plaintiffs subsequently made demand upon the defendants that they release the truck from attachment and return it to plaintiffs. The ground of the demand was that *Fuentes v. Shevin* had established that the attachment contravened the procedural due process mandates of the Fourteenth Amendment to the Constitution of the United States. Defendants refused to comply with the demand.

On October 25, 1972 counsel for plaintiffs again demanded that defendants release the attachment and return the truck to plaintiffs. The new demand was embodied in a letter written by plaintiffs' attorney to the defendant McGonagle as counsel for defendant Willis. The letter realleged that *Fuentes v. Shevin* rendered the attachment unconstitutional and added a claim that the attachment was otherwise illegal because the truck of plaintiffs was exempt from attachment under Maine law.

Again, defendants refused to honor the demand. On December 19, 1972 plaintiffs initiated the instant civil action against the defendants in the Superior Court (Cumberland County). Plaintiffs complained that the original attachment of the truck as well as the persistence of the defendants in maintaining it after June 12, 1972 (the date of the *Fuentes* decision) violated constitutional and statutory rights of the plaintiffs. Plaintiffs prayed for relief in the form of compensatory and punitive damages and an injunction

" . . . ordering Defendants to cease their unconstitutional activities and deliver one 1969 Ford truck to Plaintiffs."

Defendants filed answers, the answer of defendants Willis and McGonagle expressly including a motion that the complaint be dismissed for failure to assert a claim upon which relief can be granted.

The case went to hearing on the motion of plaintiffs for a preliminary injunction. The presiding Justice concluded that there was no legal foundation for the cause of action plaintiffs were purporting to assert. Accordingly, the presiding Justice not only denied issuance of a preliminary injunction but also ordered the complaint dismissed.[2]

Plaintiffs have appealed from the judgment entered.

We deny the appeal.

1

The presiding Justice correctly rejected the contention of plaintiffs that the attachment was illegal because made on property exempt from attachment under Maine law.

In our consideration of this point we need not decide whether, as contended by plaintiffs, the truck was exempt from attachment under 14 M.R.S.A. § 4401 as a

" . . . [tool] necessary for . . . [plaintiffs'] trade or occupation . . . ."

The truck was a chattel constituting an integral unit and was shown to have a value exceeding the $500 maximum value limitation established by 14 M.R.S.A. § 4401, as amended by P.L.1967, Chapter 496. As long ago as 1858–1859, this Court decided that, in the absence of statutory language clearly and expressly indicating to the contrary, a single unit chattel is exempt as a totality according to its full value or not at all. Hence, if such single chattel is worth

---

**2.** The presiding Justice specifically declared that his dismissal of the complaint was "to be without prejudice to the Plaintiffs to assert in any subsequent proceedings that they are entitled to credit on the District Court judgment for the fair market value of the vehicle as of the date of the attachment or any subsequent date plus interest and without reduction for costs attributable to the attachment and sale." The presiding Justice added that he intended "no suggestion as to . . . [a] ruling . . ." on the " . . . merits of these potential issues . . . ."

more than the prescribed maximum, there is no exemption as to any part of it, and the chattel in its entirety is subject to attachment. *Hughes v. Farrar,* 45 Me. 72 (1858); *Everett v. Herrin,* 46 Me. 357 (1859). In the ensuing years to the present, although the Maine Legislature has dealt with the statutes authorizing exemptions from attachment in various particular respects, it has never overridden this Court's interpretation of legislative intent as reflected in *Hughes v. Farrar* and *Everett v. Herrin.*[3]

█ The public policy of Maine is thus definitively settled, judicially and legislatively, that because the 1969 Ford truck of the plaintiffs was worth more than $500, regardless of whether it may have been a

" . . . [tool] necessary for . . . [plaintiffs'] trade or occupation . . .",

it was subject to attachment.

2

We turn to the alternative contention of plaintiffs that *Fuentes v. Shevin, supra,* is a valid foundation for the cause of action plaintiffs here seek to assert.

The attachment under attack was made before the decision in *Fuentes v. Shevin* and was made in a manner and form which complied with 14 M.R.S.A. § 4151 et seq. and the provisions of D.C.C.R. 4A as then formulated.

We are thus required to assess the impact of *Fuentes v. Shevin* upon the legality, in all the instant circumstances, of: (1) the original attachment of the truck as made prior to the *Fuentes* decision, and (2) the persistence of the defendants, after

*Fuentes,* in maintaining the attachment against the demands of plaintiffs that defendants release the attachment and return the truck to plaintiffs.

In reaching his decision, the presiding Justice took judicial notice of particular facts of record in the Superior Court in another proceeding,—specifically, the appeal to the Superior Court taken by plaintiffs herein from the District Court judgment entered against them (as the defendants) in the rent action brought by Ralph M. Willis. We have no concern here with the propriety of the presiding Justice's taking such judicial notice, since the parties do not challenge it but rather, by stipulation, have incorporated in the instant appeal record the contents of the documents of the other Superior Court case to which the presiding Justice adverted—thereby to have the present appeal record provide support for the presiding Justice's findings of fact.

Accordingly, we evaluate the present appeal on the basis that the presiding Justice properly took into account, as crucial, that as of May 11, 1972, one month before the decision of *Fuentes v. Shevin* (June 12, 1972), the District Court had fully heard the Willis rent action against Mr. & Mrs. Perkins and had entered judgment in favor of Willis for $975.00.

█ We acknowledge that notwithstanding *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and in light of *North Georgia Finishing, Inc. v. Di-Chem., Inc.,* 419 U.S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin* remains the viable pronouncement of a doctrine which has carry-over applicability to pre-judgment attachments of personal property and establishes that any

---

3. After the attachment here at issue, by P.L. 1973, Chapter 512 § 1, the Legislature amended 14 M.R.S.A. § 4401, subd. 1 to authorize an exemption for "one automobile or truck not exceeding $600 in value . . . ." Here, again, the Legislature omitted to insert express language to override applicability of the principle judicially enunciated in *Hughes v. Farrar* and *Everett v. Herrin.*

such attachment violates federal procedural due process requirements if the owner of the property attached has not had prior notice of the attachment and opportunity at a meaningful time to be heard concerning whether the attachment would arbitrarily or unfairly deprive him of his property.

Having said this much, we nevertheless conclude that in the special circumstances here present *Fuentes v. Shevin* will not serve as a foundation for the type of independent cause of action plaintiffs claim entitles them either to a recovery of damages (compensatory or punitive) or injunctive relief.

■ We have in mind that in *Fuentes v. Shevin* itself the Supreme Court of the United States observed that it was acting according to " . . . the mainstream of past cases" (p. 88 of 407 U.S., p. 1998 of 92 S.Ct.) delineating "essential procedural due process doctrine." (p. 91, n. 23, p. 1999 of 92 S.Ct.). There is thus merit in the conclusion of the Court in *Gunter v. Merchants Warren National Bank*, 360 F. Supp. 1085 (D.C.1973) that *Fuentes v. Shevin* should not be confined to prospective applicability for all purposes. See: n. 17 at p. 1091. From this, however, it does not follow that *Fuentes v. Shevin* is to be given retrospective applicability for all purposes.

For present purposes, we concentrate on the point that the doctrine of *Fuentes v. Shevin* has broadened the applicability of procedural due process to require modifications of prior pre-judgment attachment practices previously understood to be constitutional under the decision in *McKay v. McInnes*, 279 U.S. 820, 49 S.Ct. 344, 73 L. Ed. 975 (1929). In essence, then, we are now called upon

· " . . . [to] reach back . . . to attach legal consequence to patterns of conduct premised . . . on a differ-

ent understanding of the controlling . . . law from the rule that ultimately prevailed."

See: *Lemon v. Kurtzman (II)*, 411 U.S. 192, 198, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973); see also: *Cranston v. Commercial Chemical Corp.*, Me., 324 A.2d 301, n. 6 at p. 304 (1974).

In this process we are guided by the principle enunciated in *Lemon v. Kurtzman (II), supra,* that the

" . . . effect of a given constitutional ruling on prior conduct ' . . . depends upon a consideration of "particular relations . . . and particular conduct . . . of rights claimed to have become vested, of status, of prior determinations deemed to have finality"; and "of public policy in the light of the nature both of the statute and of its previous application." ' " (pp. 198, 199 of 411 U.S., p. 1468 of 93 S.Ct.)

As further counselled by *Lemon v. Kurtzman (II), supra,* we

" . . . eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests, notwithstanding that those interests have constitutional roots." (p. 201, p. 1469 of 93 S.Ct.)

■ The presiding Justice correctly observed that the procedural due process mandates of *Fuentes v. Shevin* are calculated to achieve the judgment of a neutral magistrate as to the probable validity of the attaching creditor's claim, thereby to prevent arbitrary encroachment upon the property of the alleged debtor. See: 407 U.S. at pp. 80, 81, 92 S.Ct. at pp. 1994, 1995.

■ Admittedly, during the period from the date of the attachment on January 17, 1972 until the District Court hearing and

judgment on May 11, 1972 no neutral magistrate had intervened and plaintiffs were exposed to the possibility that defendants had arbitrarily or unfairly invaded their property. This was authorized, however, by the then current law of Maine as understood, in light of *McKay v. McInnes, supra,* to comport with procedural due process. In such context the factor which here assumes decisive importance is that *before Fuentes v. Shevin* was decided and *before* plaintiffs had made demand for the return of the truck the District Court had entered a judgment implicit in which was recognition that the attachment in the case at bar had *never* been an unfair or arbitrary encroachment upon the property of Mr. & Mrs. Perkins.

Because of the presence of this special circumstance, we conclude that reconciliation of

" . . . the constitutional interests reflected in a new rule of law with reliance interests founded upon the old . . . " (p. 198 of 411 U.S., p. 1468 of 93 S.Ct. of *Lemon v. Kurtzman (II), supra),*

is here achieved most fairly and equitably by a decision that *Fuentes v. Shevin* is inapplicable to establish an illegality—either in the attachment as here originally effected prior to *Fuentes* or in defendants' maintenance of the attachment after *Fuentes*—upon which plaintiffs may predicate the independent cause of action they now seek to assert to authorize a recovery of damages (compensatory or punitive) or an injunction ordering release of the attachment and return of the truck to its owners.

We interpret the judgment of the Superior Court to have this meaning and we, therefore, sustain it.

The entry is:

*Appeal denied.*

All Justices concurring.