Michael GUTTERMAN, Appellant,

v.

The FIRST NATIONAL BANK OF
ANCHORAGE, Appellee.

No. 3996.

Supreme Court of Alaska.

July 13, 1979.

Robert Blasco, Alaska Legal Services
Corp., Juneau, for appellant.

Anthony M. Sholty, Faulkner, Banfield,
Doogan & Holmes, Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CON-
NOR, BOOCHEVER, BURKE and MAT-
THEWS, JJ.

RABINOWITZ, Chief Justice.

The First National Bank of Anchorage
obtained a default judgment against Mi-
chael Gutterman. That judgment provided
that three paintings owned by Gutterman,
then in the possession of an art dealer, were
to be delivered to the custody of the clerk
of the superior court and sold at an execu-
tion sale, with the proceeds to be applied
toward satisfaction of the judgment.

Prior to the execution sale, Gutterman
notified the court of his claim, under AS
09.35.080(a)(2), of an exemption from execu-
tion in the paintings in the amount of $300.
The sale of the paintings was postponed at
the Bank's request, and the Bank subse-
quently filed a motion to disallow the claim
of exemption in the superior court.

The relevant statutory section, AS 09.35.-
080(a)(2), provides:

Exemptions (a) The following property
is exempt from execution, except as oth-
erwise specifically provided when selected

and reserved by the judgment debtor or his agent at the time of the levy, or as soon after levy and before sale as the existence of the levy becomes known to him:

. . . . .

(2) books, pictures, and musical instruments belonging to the judgment debtor not to exceed $300 in value . . . .

The parties stipulated that each of the paintings in question was worth more than the $300 exemption provided in the statute. The question thus presented to the superior court was whether Gutterman was entitled to the benefit of the exemption provision and to receive $300 from the proceeds of the sale of the paintings. The superior court held that "pictures" exceeding $300 in value are not property exempt from execution by·the terms of the statute and that Gutterman therefore had no exemption right in the proceeds of the execution sale.[1] It is from this decision of the superior court that Gutterman brings this appeal.[2]

1. The superior court noted that, unlike the provisions of AS 09.35.090 concerning the residence exemption, AS 09.35.080 contained no express exemption for the proceeds of a sale of "pictures" or other exempt items enumerated therein. The court reasoned that, accordingly, the legislature "apparently intended . . . [a] different treatment with respect to categorical exemptions." It concluded

> that a picture that exceeds $300.00 in value is not exempt. It is the picture, and not the value, to which the exemption is directed.

2. After the superior court entered its order denying the claim of exemption, the parties entered into a stipulation providing for the release of the paintings to the bank by the clerk of the court. The stipulation expressly and fully reserved Gutterman's rights to appeal the superior court's order. The three paintings were subsequently purchased by the bank at an execution sale for $1500.

3. For a general discussion of the historical purposes and effects of exemption laws, see Vukowich, *Debtors' Exemption Rights*, 62 Geo.L.J. 779, 782–88 (1974).

4. Plumb, *The Recommendations of the Commission on the Bankruptcy Laws—Exempt and Immune Property*, 61 Va.L.Rev. 1, 4 (1975) (footnotes omitted). See Countryman, *For a New Exemption Policy in Bankruptcy*, 14 Rut-

■ In order to properly discuss the question raised by Gutterman as to the nature of the exemption granted by AS 09.35.080(a)(2), it is necessary to briefly place exemption laws in their social and historical context.[3] Exemption laws emerged from bankruptcy law policies concerned with both maintaining a certain basic level of economic vitality in individual debtors and reasonably protecting creditors' rights to satisfaction of legally incurred debt.

In order to protect debtors and their families from pauperism and to facilitate rehabilitation, state laws universally provide for the exemption of certain property, or a certain value of property, from seizure for general debts. The laws range in liberality from the most spartan subsistence standard to the extremes reflected in unlimited exemptions for homesteads and life insurance.[4]

A debtor's property which is not exempted from execution in satisfaction of debt by applicable state or federal laws is subject to the rights of creditors.[5]

gers L.Rev. 678, 681–92 (1960), and Note, *Bankruptcy Exemptions: Critique and Suggestions*, 68 Yale L.J. 1459, 1463–65 (1959), for discussions of the varying scope of state exemption laws. See also J. MacLachlan, Bankruptcy §§ 160–61 (1956).

5. AS 09.35.070 expresses this principle in the following terms:

> *Property Liable.* All goods, chattels, money, or other property, both real and personal, or an interest in the property of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action are liable to execution.

The federal law of exemptions has no applicability to this case. The recently revised federal Bankruptcy Act, which takes effect October 1, 1979, contains specific provisions relating to exemptions under bankruptcy law. See 11 U.S.C. § 522, *enacted* November 6, 1978. Pub.L. No. 95–598. *The historical and revision notes to that section list some of the items that may be exempted under other federal laws.* The revised Act specifically provides that a bankrupt debtor retains exemptions allowed under applicable state law. *Id.* § 522(b). Prior to enactment of the revised Act, the federal Bankruptcy Act contained no uniform scheme of exemptions, but, instead, deferred to other federal and state law as to exemptions. *See* Plumb, note 4 *supra*, at 9–13.

While the scope of state exemption laws varies considerably among the states, certain categories of debtors' property are provided some degree of exemption in most states. Prominent among state exemptions is the homestead ·or residence exemption, which exempts the debtor's homestead from execution sale either entirely or to the extent of a certain specified value.[6] Among the other forms of debtors' property provided varying degrees of protection from creditors are life insurance policies and proceeds; earnings and subsistence allowances; and various types of non-wage income, including welfare payments, retirement income, alimony and child support, or other compensation payments.[7] In addition to these exemptions, some states, though not Alaska, provide general dollar amount exemptions, with the particular assets to be included in the dollar amount left to the debtor's choice.[8]

The exemption which is the subject of this appeal is one of the specific personal property exemptions provided for in AS 09.35.080(a).[9] Personal and household prop-

**6.** Alaska's residence exemption is defined in AS 09.35.090. A homestead exemption is provided by Section 4 of the Uniform Exemptions Act, approved by the National Conference of Commissioners on Uniform State Laws in 1976. *See generally* Haskins, *Homestead Exemptions*, 63 Harv.L.Rev. 1289 (1950); Vukowich, note 3 *supra*, at 797–807. Vukowich reports that all but six jurisdictions provide a homestead exemption. *Id.* at 797.

**7.** *See generally* Vukowich, note 3 *supra*, at 807–26. Certain income is exempted from execution by AS 09.35.080(b). Alaska's income exemption statute, as written prior to amendment in 1974, was interpreted by this court in *Miller v. Monrean*, 507 P.2d 771 (Alaska 1973). Other Alaska statutes providing exemptions from attachment, garnishment, and execution for these types of debtors' property include: AS 09.35.085 (child support payments); AS 09.55.210 (alimony support and maintenance payments); AS 14.25.200 (teachers' retirement salaries and retirement fund assets); AS 23.20.405 (unemployment compensation benefits); AS 23.30.160 (workmen's compensation benefits); AS 47.25.550 (old age assistance payments); AS 47.25.710 (assistance payments to blind persons); AS 47.25.880 (assistance payments to disabled persons). Alaska's provisions for exempting the proceeds of various types of insurance are in AS 21.42.320–.350. *See also* Uniform Exemptions Act §§ 5–7.

Various types of income, compensation, and other benefits are exempted under federal law. *See* Historical and Revision Notes to 11 U.S.C. § 522(b), *enacted* November 6, 1978, Pub.L. No. 95–598.

**8.** *See* Vukowich, note 3 *supra*, at 829–32.

Alaska's exemptions provisions contain no such general dollar amount exemptions, but provide value limitations for specific categories of exempt property. *See* AS 09.35.080. Several commentators have recommended that exemption statutes should prescribe a value limitation for personal property to be chosen by the debtor without restriction as to form or kind. *See, e. g.,* Joslin, *Debtor's Exemption Laws: Time for Modernization*, 34 Ind.L.J. 355, 362–75 (1959); Vukowich, note 3 *supra*, at 829, 832; Note, *Bankruptcy Exemptions: A Full Circle Back to the Act of 1800?*, 53 Cornell L.Rev. 663, 671–83 (1968); Note, note 4 *supra*, at 1507–14. However, this approach has been rejected by both the Uniform Exemptions Act and the revised federal Bankruptcy Act. *See* Uniform Exemptions Act § 8, Comment (2).

**9.** AS 09.35.080(a) provides:

(a) The following property is exempt from execution, except as otherwise specifically provided when selected and reserved by the judgment debtor or his agent at the time of the levy, or as soon after levy and before sale as the existence of the levy becomes known to him:

(1) Repealed by § 2 ch. 45 SLA 1974.

(2) books, pictures, and musical instruments belonging to the judgment debtor not to exceed $300 in value;

(3) necessary wearing apparel belonging to the judgment debtor for the use of himself or his family; watches or jewelry not to exceed $200 in value;

(4) the tools, implements, apparatus, motor vehicles, books, office furniture, business files, animals, laboratory and any other article necessary to enable any person to carry on the trade, occupation, or profession by which that person habitually earns his living to the value of $2,500, including sufficient quantity of foods to support the animals, if any, for six months;

(5) the following property belonging to the judgment debtor and in actual use or kept for use by and for his family: animals, household goods, furniture, and utensils to the value of $1,200, including food sufficient to support the animals, if any, for six months, and provisions actually provided for family use and necessary for the support of that person and family for six months;

(6) all property of a public or municipal corporation;

(7) no article of property mentioned in this section is exempt from execution issued on a

erty exemptions such as those provided in AS 09.35.080(a)(2)

are designed to ensure that debtors will have necessary items for living in reasonable comfort and for earning a living. The statutes vary as to the types of items that are exempt and as to the amount of their exempt value. . . .

In addition to useful household items, the exemption statutes also commonly apply to more personalized, arguably less necessary, items such as family pictures, Bibles, wedding rings and other jewelry, books, historical and scientific collections, guns, church pews, and cemetery lots. The states also allow debtors and members of their families to keep all of their clothing or such as is necessary.[10]

Alaska's limited value exemption for "pictures" thus represents a legislative judgment that such items are among the amenities of life in which a debtor may preserve at least a limited investment.[11]

Gutterman does not assert a right to preserve the paintings themselves, which have in fact been sold, but argues that he nonetheless should retain the benefit of the $300 exemption granted to debtors owning "pictures." Resolution of this issue rests on an interpretation of the statutory phrase in AS 09.35.080(a)(2) granting an exemption for "pictures . . . belonging to the judgment debtor not to exceed $300 in value." As the superior court's order denying an exemption recognized, the meaning of this statutory phrase is neither clear nor unambiguous.[12]

■■■ It is an accepted general rule that "exemption laws are remedial in character and should be liberally construed in favor of the debtor."[13] We therefore conclude that the statute should not be interpreted in a way which completely eliminates a debtor's exemption rights in an item of property within an exempt category because that item's value exceeds the statutory allowance. Instead, we agree with the reasoning and conclusion advanced by one commentator on exemption laws:

The few statutes which regulate the forced sale of exempt personalty worth more than the statutory maximum provide that the exempt amount is to be paid to the debtor from the proceeds of sale prior to any payment to the execution creditor. The exemption clearly should extend to the proceeds of an involuntary sale of personalty. Otherwise, the exemption is meaningless whenever the value of the personalty exceeds the statutory allowance, since the levying creditor immediately could order the sheriff to pay the total amount to him. Moreover, if the sheriff is forced to sell exempt property, it is likely that the debtor has no nonexempt property. This is a situation where the protection of the exemption laws is needed and appropriate. Accordingly, the courts should afford the

---

judgment recovered for its price, and, in the event the article of property as been sold or exchanged for other property, the proceeds of the sale or the article for which it was exchanged is not exempt from execution.

**10.** Vukowich, note 3 *supra*, at 827–28 (footnotes omitted).

**11.** *Compare* AS 09.35.080(a)(2) *with* Cal.Civ. Proc.Code § 690.1 (West 1955 & Supp.1979) ("Works of art shall not be exempt unless of or by the debtor and his resident family") *and* Or.Rev.Stat. § 23.160(1)(a) (1977) ("pictures . . . to the value of $150"). *See also* Uniform Exemptions Act § 8(a)(3) ("family portraits and heirlooms of particular sentimental value to the individual").

**12.** The superior court's order noted that "[a]t first blush, the Court frankly was inclined to [Gutterman's] position."

Faced with a similar question as to the interpretation of a Massachusetts statute granting an exemption for an "automobile . . . not exceeding seven hundred dollars in value," a federal district court observed that:

If nothing else is clear, it is beyond serious dispute that the statutory phrase 'not exceeding seven hundred dollars in value' is ambiguous on its face, at least with respect to the controlling issue in this case.

*Levin v. Mauro*, 425 F.Supp. 205, 206 (D.Mass. 1977).

**13.** *In re Canutt*, 264 F.Supp. 919, 920 (D.Or. 1967). *See also Levin v. Mauro*, 425 F.Supp. 205, 207 (D.Mass.1977); 1A Collier on Bankruptcy ¶ 6.03[3] (1978).

debtor a reasonable time to purchase other property with the proceeds.[14]

This is the approach adopted by the Uniform Exemptions Act. The comment to that Act's provision defining a debtor's personal property exemptions, Section 8, makes it

> clear that if an item within any of the categories listed has a value exceeding $500, the individual is nonetheless entitled to an exemption in the items to the extent of $500, and the creditor is entitled to levy only on the excess value.

However, in both the Uniform Exemptions Act and the revised federal Bankruptcy Act the statutory language employed more clearly reveals the intention to extend the benefit of limited value exemptions to debtors possessing "excess value" items [15] than does the more ambiguous language of AS 09.35.080(a)(2).

More helpful to the precise question of statutory interpretation presented here is *Levin v. Mauro*,[16] interpreting a Massachusetts exemption statute worded much like AS 09.35.080(a)(2). The Massachusetts statute provided an exemption in an automobile "not exceeding seven hundred dollars in value;" [17] the Alaska statute provides an exemption in pictures "not to exceed $300 in value." The *Levin* court, after noting the ambiguity of this language [18] and the remedial purpose of exemption statutes, concluded that the Massachusetts statute should be construed to allow "a debtor owning a car in excess of the limit . . . to turn it over to the trustee for liquidation . . . [and] to purchase another vehicle with $700 derived from liquidation proceeds." [19] In reaching this conclusion, the court rejected as "legitimate, but by no means conclusive," the argument that the Massachusetts legislature had expressly provided setoff schemes with regard to other exemptions and that "if the legislature wanted a setoff it knew how to write one." [20]

■ We find this analysis and authority persuasive and hold that Gutterman should receive the $300 amount of the exemption from the proceeds of the sale of the paintings. A contrary result would be unreasonable because it would provide no exemption for a debtor whose picture has a value of $300.01 and a full exemption for a debtor whose picture has a value of $300.01 and a full exemption for a debtor owning the same type of property worth just one penny less.[21] We think our resolution of this question fairly balances the rights of debtors and creditors, since their respective inter-

---

**14.** Vukowich, note 3 *supra*, at 835 (footnote omitted).

**15.** Section 8 of the Uniform Act grants an exemption in certain property "to the extent of a value not exceeding $500 in any items of property." Section 522 of the revised federal Bankruptcy Act exempts property defined in terms of the debtor's "interest" in specified items, a more clear expression of this exemption policy.

**16.** 425 F.Supp. 205 (D.Mass.1977).

**17.** *Id.* at 206, *quoting* Mass.Gen.Laws ch. 235, § 34, cl. 16.

**18.** See note 12 *supra*.

**19.** 425 F.Supp. at 207. A similar conclusion was reached in *Maschke v. O'Brien*, 142 Pa.Super. 559, 17 A.2d 923 (1941). *See also* 3 J. Henderson, Remington on Bankruptcy § 1305.5 (1957 and Supp.1978) ("Items exceeding maximum allowable value"). *But see In re Fox*, 16 F.Supp. 320 (S.D.Cal.1936) (statute exempted "one motor vehicle of a value not exceeding one hundred dollars"); *Perkins v. McGonagle*,

342 A.2d 287 (Me.1975) (resting on fact that the legislature had never overruled more than 100 years of judicial precedent to the effect that "if such single chattel is worth more than the prescribed maximum, there is no exemption as to any part of it, and the chattel in its entirety is subject to attachment"). It is noteworthy that, in contrast to the legislative acquiescence on which the *Perkins* court relied, California has enacted statutory provisions with a detailed schedule for the distribution of the proceeds from the sale of an automobile of excess value since the decision in *In re Fox*. *See* Cal.Civ.Proc.Code § 690.2 (West 1955 and Supp.1979).

**20.** 425 F.Supp. at 207–08. A similar argument was found persuasive by the superior court here. See note 1 *supra*.

**21.** As one court has said, there would be "neither rhyme nor reason" to such a result. *Maschke v. O'Brien*, 17 A.2d 923, 924 (Pa.Super.1941).

ests in such exempt categories of property will be uniform and not dependent on very small differences in the value of such items of property.

The $300 exemption benefit provided by AS 09.35.080(a)(2) does not, however, confer an unrestricted right to that portion of the proceeds from the execution sale. The terms of AS 09.35.080(a)(7) provide that "in the event the article of property has been sold or exchanged the proceeds of the sale or the article for which it was exchanged is not exempt from execution." Thus, the $300 in proceeds to which Gutterman is entitled is not in itself exempt and does not assume the generic exemption afforded the "pictures" from which it is derived.

Notwithstanding this principle, as a matter of exemption law a debtor is allowed and encouraged to convert nonexempt property into exempt property and to change the types of exempt property he or she owns without losing the benefit of the relevant exemptions. As the notes to Section 522 of the revised federal Bankruptcy Act state:

> The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.[22]

Only in cases of actual fraud as to creditors, such as attempting to convert secured collateral to exempt property, is the practice not recognized by law.[23]

Gutterman's interest in these proceeds is identical to that recognized in several jurisdictions for the proceeds from a voluntary sale of exempt property. More than fifty years ago, the Kansas Supreme Court, in the context of such voluntary sales, stated that:

> It is well settled that the proceeds of exempt property are exempt to the debtor for a reasonable time, to enable him . . . to invest the money in other exempt property.[24]

Gutterman shall therefore receive the $300 dollar exemption from the sale proceeds and be allowed a reasonable time in which to reinvest those proceeds in other exempt property.

The decision of the superior court is therefore REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.[25]

---

**22.** Historical and Revision Notes to 11 U.S.C. § 522, *enacted* November 6, 1978, Pub.L. No. 95–598. *See also* Plumb, note 4 *supra*, at 18 n.87; Vukowich, note 3 *supra*, at 833.

**23.** *See generally* 4A Collier on Bankruptcy ¶ 70.14[3] (1979); J. MacLachlan, Bankruptcy §§ 162–64 (1956).

**24.** *Tally v. Palmer*, 112 Kan. 391, 210 P. 1104 (1922). *Accord, Cullen v. Harris*, 111 Mich. 20, 69 N.W. 78 (1896); *Bogardus v. Salter*, 127 Okl. 4, 259 P. 561 (1927); *Blackford v. Boak*, 73 Or. 61, 143 P. 1136 (1914). *Contra, Ned Maxey & Son v. Tinsley*, 167 Tenn. 128, 67 S.W.2d 139 (1934); *Gillett State Bank v. Knaack*, 229 Wis. 179, 281 N.W. 913 (1938). *See generally* Vukowich, note 3 *supra*, at 833–34.

Since there is no specific statutory time period for the reinvestment of the proceeds of the sale of exempt property in Alaska, a general requirement of reinvestment within a reasonable time is appropriate. *See* Vukowich, note 3 *supra*, at 834–35.

Section 9 of the Uniform Exemptions Act contains specific provisions for "tracing" the proceeds from the involuntary or voluntary sale of exempt items. This serves to protect such proceeds for a specified time for the purpose of enabling the individual debtor to replace the property.

**25.** Assuming the point was properly raised below, our disposition makes unnecessary consideration of the merits of Gutterman's contention that AS 09.35.080(a)(2), as interpreted by the superior court, violates the equal protection guarantees of the United States and Alaska constitutions.